DEXTER (HALL v.). See Case No. 5,929.

## Case No. 3,862.

### DEXTER v. HARRIS et al.

[2 Mason, 531.][1]

Circuit Court, D. Rhode Island. June Term, 1822.

VENDOR AND VENDEE—BONA FIDE PURCHASERS—CONSTRUCTIVE NOTICE—PURCHASE BY ADMINISTRATOR — MORTGAGE — NATURE OF TITLE—RELEASE OF EQUITY OF REDEMPTION.

1. A bona fide purchaser for a valuable consideration, without notice of any fraud in the grant to his vendor, shall hold the estate against the original grantor and his heirs.

2. Where real estate of an intestate was ordered by the legislature to be sold by a person appointed by the legislature, for payment of his debts. the general administrator upon the estate may be a purchaser at the sale. If the sale by the agent be fraudulent, yet a bona fide purchaser without notice shall hold against the heirs of the deceased.

3. A mortgage in fee conveys an estate at law, upon which a real action may be maintained. A release of the equity of redemption does not operate by way of merger of the estate conveyed by the mortgage, but as an extinguishment of the equity of redemption.

[Cited in Dundas v. Bowler, Case No. 4,140; U. S. v. Stowell, 133 U. S. 19, 10 Sup. Ct. 248.]

4. A purchaser has not by law constructive notice of all matters of record; but only of such, as the title deeds of the estate refer to, or put him upon inquiry for.

5. A release to a purchaser at a marshal's sale by the judgment debtor, who holds the estate under two titles. one by mortgage. and the other by a distinct conveyance, conveys both titles to the purchaser.

Ejectment, in the nature of a real action, according to the local practice. This case was tried at the last November term in this district, and a verdict found for the plaintiff [Edward Dexter] upon the following facts: Both parties claimed a title to the demanded

---
[1] [Reported by William P. Mason, Esq.]

premises under one Charles Harris, who died in October, 1784. The defendants [Andrew Harris and others] are the children and heirs of Charles Harris. The plaintiff claimed a derivative title, as a purchaser, paramount to that of the heirs. The plaintiff's title, as it was made out at the trial, was as follows. Charles Harris, on the 18th of November, 1794, mortgaged the estate in question to John Harris for £368. In November, 1792, Charles Harris, by a sealed instrument, delivered seizin and possession to the mortgagee of a part of the mortgaged premises in consideration of $1,400, a part of the mortgage money, reserving to himself the right of redemption. The mortgagee and those claiming under him have held the exclusive possession of the estate so delivered ever since that period. Charles Harris retained possession of the other part of the mortgaged premises until his death in 1794, acknowledging however by the sealed instrument above referred to, that it was liable for £64, the residue of the mortgage money (principal and interest) then unpaid. In January, 1795, John Harris and Mary Harris (the widow of Charles Harris) took administration on his estate and returned an inventory of his personal estate of £123 1s. 9d. In June, 1796, the administrators presented a petition to the legislature, stating that the personal estate of the intestate was insufficient to pay his debts, that his real estate was under mortgage, and that it would be for the benefit of his widow and children, that the whole real estate should be sold, &c. and prayed, that some suitable person might be appointed to sell, and execute a deed or deeds of the real estate, by and with the advice and direction of the town council of the town of Scituate, where the intestate had his residence, and the real estate was situated. The legislature granted the petition, and authorised a sale to be made by one James Aldrich, declaring "that a deed by him given, as prayed for, shall vest in the purchaser or purchasers all the right, title and interest, which Charles Harris had in the premises at the time of his decease." In March, 1797, James Aldrich by a deed, reciting the legislative proceedings and authority, and that the sale was made by the advice and consent, and under the directions of the town council of Scituate, in consideration of $2,250, (the alleged amount of the intestate's debts) and also of a lease of the dwelling house and parcel of the premises, made by John Harris to Mary Harris, conveyed the mortgaged premises to John Harris in fee simple. The lease referred to was executed on the same day, and purported to demise the dwelling house, (parcel of the premises) for fourteen years, with certain allowances of fire wood, &c. for the benefit of Mary Harris and her children during the term. In November, 1809, the demanded premises were sold (among other real estate) by William Peck, marshal of the United States, to satisfy a judgment and execution against John Harris at the suit of Philip Ammidon & Co., and were duly conveyed to the plaintiff, who was purchaser at the sale, for $4,550. In February, 1812, John Harris, by his deed of that date, released to the plaintiff in consideration of $100 all his title, &c. to the premises, and Mary, his wife, by the same instrument, also released her right of dower. Such was the deraignment of the plaintiff's title. No exception was taken to the admissibility of any of the deeds constituting the title.

The defence turned upon two points: First, That John Harris as administrator, was to be considered a trustee of the estate, and as such was incapable of becoming a purchaser of the estate from Aldrich, and therefore the conveyance to him was utterly void. This objection was overruled upon the ground, that John Harris did not stand in the situation of a trustee; and therefore, that the doctrine did not apply; and if he had been a trustee, the conveyance would not be void in law; but at the most would have been voidable in equity only, upon a bill framed for suitable relief. The second ground of defence was, that the estate was sold below its real value; and if so, then under the circumstances, in which John Harris stood, the sale could not have been bona fide, and the conveyance to him was invalid. In support of this last point the defendants offered to give in evidence, that the estate was greatly undervalued. The plaintiff objected to the admission of this evidence, and it was rejected by the court. The defendants then further offered certain papers to show misconduct in John Harris in the administration of the intestate's estate in other particulars, with the view to fortify the presumption, that the sale was collusive. This evidence was also objected to by the plaintiff and rejected by the court. The ground of the rejection was, that the plaintiff was a bona fide purchaser of the estate, and unless he had notice of the fraud, supposing there was any in the sale by Aldrich, he took the estate under the judgment sale purged of the fraud. No notice was pretended of any such fraud by the plaintiff, and therefore, taking the case the most strongly for the defendants, the evidence did not establish any legal defence. Independently of this general ground, the court intimated, that it could not be admitted for a moment, that a sale at an under value was necessarily void. That mere inadequacy of price was not in general a sufficient ground to rescind a contract. There must be other ingredients in the case. It must be so gross as to repel all notion of good faith. It must be such as would lead to the conclusion, that the sale was collusive and fraudulent. That the misconduct of John Harris in the general administration, clear of this transaction, could not be admitted as proof, that this sale was fraudulent; for that, whatever might be his laches, it could not affect Aldrich with the

imputation of fraud, since he had nothing to do with the general administration, but was merely a confidential agent, appointed by the legislature for the special purpose of making this sale. It was also intimated, that the plaintiff had a right to draw in aid the mortgage of Charles Harris to John Harris, against which there was no imputation of fraud; and as this was a subsisting mortgage, the title under it either passed by the judgment sale, or was conveyed by the release in 1812 to the plaintiff, and in either view was sufficient to support his action. Upon these suggestions and directions by the court the defendants made no farther opposition to a verdict for the plaintiff.

A motion for a new trial was afterwards made, and argued at this term by—

Mr. Searle, for plaintiff.
Whipple and Robbins, for defendants.

STORY, Circuit Justice. This motion for a new trial has been made and argued upon grounds, which were not stated or relied upon at the trial. And the granting of the motion must be in the exercise of a sound discretion by the court, because injustice has been done to the defendants under circumstances which entitle them to relief. If there was error in the law originally laid down to the jury the defendants are entitled, I might almost say, ex debito justitiae to a new trial; but if there was no such error, the court ought clearly to see, that manifest injury and injustice have arisen, which it is its solemn duty to correct, before it ventures to set aside the verdict. The defendants' counsel have surrendered the first point made at the trial, to wit, that John Harris was a trustee incapable of becoming a purchaser, and therefore the deed to him was void at law. Nor is it now contended, that if the purchase by the plaintiff was without notice of any fraud in the original sale by Aldrich, he is not entitled to be protected in his title, and to recover in this action. These points, which were in fact the only points in controversy at the trial, and which disposed of the whole cause, may be dismissed without further commentary; though I take the doctrine of the court to be perfectly established by general principles, as well as by direct authority.

The ground now assumed is, that the papers offered in evidence at the trial do establish the sale by Aldrich to have been fraudulent; and that the plaintiff had notice of the fraud. I will not stop to consider, how far any fraud might have been made out in the sale, if all the circumstances, which have been stated in the defendants' argument, had been in proof before the jury. There is such strong colouring in his statement, that, if it could have been sustained on the trial, it would certainly have raised a strong presumption of bad faith. But much of what is now asserted was not in proof; and inferences are now advanced from the dry text of the written documents, which do not appear to me warranted in law or in fact. I agree, that the question of fraud was a question for the jury, of which they were to judge upon the evidence before them, and in respect to their judgment on the facts I had neither the inclination nor the right to interfere. But the question of the admissibility of evidence belonged to the court; and it was its duty to prevent any from going to the jury, which as between these parties was not by the rules of law admissible. The evidence of fraud in the original sale was not by law admissible in this suit, unless knowledge of the fraud could be brought home to the plaintiff. Such knowledge was not pretended at the trial. How could the court then do otherwise than reject it? But it is now said, that the plaintiff had notice of the fraud; and that the documents show it. It is not contended, that the plaintiff had any direct actual notice; but it is contended, that he had constructive notice, because he is presumed to know every fact that constitutes a part of his title, and every fact, which is matter of record, or of necessary inference from matter of record. This is a pretty broad ground of imputing constructive notice, and I should have been glad to see some authority in support of such a sweeping position. None is produced; and I have been accustomed to consider the doctrine of constructive notice as resting on much narrower grounds. There is no such principle of law, as that what is matter of record shall be constructive notice to a purchaser. The doctrine upon this subject as to purchasers is this, that they are affected with constructive notice of all, that is apparent upon the face of the title deeds, under which they claim, and of such other facts, as those already known necessarily put them upon inquiry for, and as such inquiry, pursued with ordinary diligence and prudence, would bring to their knowledge. But of other facts extrinsic of the title, and collateral to it no constructive notice can be presumed; but it must be proved. Apply this doctrine to the present case. The plaintiff claims under a purchase at the marshal's sale the estate in question. That estate was derived under John Harris; and his title was, first, by a mortgage to him from Charles Harris; and secondly, by a deed of conveyance of his remaining interest from Aldrich. Whatever is contained in these deeds must be presumed to be known to the plaintiff. The petition therefore to the legislature, the approbation of the town council, the legislative resolve, the sale under the resolve for the consideration stated in the deed, are facts, of which he had notice. But how can it be pretended, that the facts stated in these papers, if true, constitute a case of fraud? Whether true or not the purchaser was not bound to inquire, nor had he the means of inquiry, nor was he put upon inquiry. He

found John Harris in the legal possession and ownership of the estate, according to the manifest purport of the deed, twelve years after its execution. He had no right to presume the possession to be fraudulent. The legislature had sanctioned the previous facts by authorising the sale; and the sale itself was approved by the town council. The fraud therefore, if any there was, was latent, and rested in matters in pais the knowledge of which could not be inferred from the terms of the deed or the other written documents connected with it. If there had been any evidence of notice, its weight ought to have been left to the jury. But as it was not pretended at the trial, that there was any, the court would not have been justified in admitting facts, which did not touch the merits of the case as between these parties. The case now stands in a somewhat different predicament; for the verdict ought not to be set aside, unless the court perceives clearly, that the papers did legally conduce to prove notice of the asserted fraud by the plaintiff. I see no such proof; on the contrary, as far as it goes, the evidence seems to me altogether to repel the presumption of notice. It is therefore wholly unnecessary to enter into the consideration of the question, whether the Aldrich deed was in fact fraudulent; though I think one ought to listen with some distrust to the inflamed representations on this subject. They are easily made, where there have been any irregularities of conduct; but irregularities are not always proof of fraud. They may arise from ignorance, mistake, or inconsiderateness. Be this as it may, the asserted fraud cannot touch a bona fide purchaser without notice, as the plaintiff in my judgment, upon the evidence now before the court, clearly is.

Then again, if the ground of notice fails, it is argued, and it is a new point not suggested at the trial, that the sale by Aldrich was bad, because it was not a sale at public auction. The natural answer is, that the legislative resolve does not require the sale to be at public auction. It merely requires, that it should be with the advice and direction of the town council. But it is said, that every sale authorised by the legislature must be at public auction, unless the contrary is expressly provided for in the resolve. No authority is produced to establish this position; and I am not able to perceive any reason for it. It must depend upon an examination of the very terms of each legislative act, whether a public or private sale be intended. And if the legislature by an act direct a sale by its own agent, and especially, if the sale be under the control of another public body, it seems to be the first rule of construction to hold any sale, either private or public, as a compliance with the act, unless from the context a necessary implication arises, which compels us to restrict the general meaning of the word, "sale," to a specific mode of selling.

If A. authorizes B. to make sale of his estate, such an authority need not be executed by a public sale. And the case of a sale by legislative authority does not necessarily differ from one by private authority. In short, the whole is a question of intent; and where there is nothing to restrain the meaning, the power is to be construed as broadly, as the terms used ordinarily import. This objection to the sale is not in my judgment supported in point of law.

But assuming, that the sale by Aldrich is invalid, and that the title of the plaintiff stands affected by the original infirmity of that sale, which is assumed merely for the purpose of argument, what is to defeat the plaintiff's right of recovery upon the derivative title under the mortgage of Charles Harris to John Harris? There is no pretence, that that mortgage was not an honest transaction for a valuable consideration. But it is said, that the mortgage was not a subsisting title at the time of the purchase of the estate by the plaintiff, because it was extinguished by merger in the superior title acquired by John Harris under the deed of Aldrich; or because it had been previously satisfied. As to the merger, it is clear, that there can be no such operation, as the argument supposes. At law by the mortgage a conditional estate in fee simple passed to the mortgagee; and the only operation of the conveyance of Aldrich would be to extinguish the equity of redemption, and thus to remove the condition. If that conveyance was good, it had the effect, not to enlarge the estate, but to extinguish a right. It was not the drowning a lesser in a greater estate, for the estate was already a fee simple; but it was an extinguishment of the condition or equity. If that conveyance was void or voidable, it left the mortgaged estate exactly, where it found it. As to the mortgage having been satisfied, there is not the slightest proof of it. Every paper in the case, affords a presumption the other way. No such point was attempted at the trial; and not a scintilla of evidence is now offered to sustain the suggestion. It was true, that the original mortgage was not produced, because it was not asked for, nor shown to be in the plaintiff's possession or power, nor was the official copy objected to. The plain reason for all this was, that no such point was in controversy. Nay, the very opening of the defendants' argument upon the motion before the court asserts, "that there were no debts against the estate, except his (John Harris's) own; he was the sole creditor, and he a creditor by mortgage, and his mortgage without any collateral security, and the estate ample for the debt." But if it had been otherwise, so long as the mortgage remained uncancelled and unreleased, it constituted at law a conveyance of the estate, and would sustain a recovery in a real action. If then the estate under the mortgage was a bona fide and subsisting title, it is not denied, that it passed to

the plaintiff, either by the marshal's deed in 1809, or by the release of John Harris in 1812. The release being for a valuable consideration would alone convey it either by way of assignment, or confirmation, or by passing the estate or right of the releasor.

The defendants then have made out no case at law, that shows the verdict wrong, or that entitles them to relief. The verdict then ought not to be set aside. It was not improvidently given, nor do the defendants show, that they could now make a better case. What may be the defendants' remedy, if any, in equity, I pretend not to consider. It will be sufficient to decide that, if the question should ever come before the court. The judgment in this case can decide no more than the legal rights of the parties.

The motion for a new trial is overruled. and judgment must be entered for the plaintiff.