# VAN DYNE *vs.* THAYRE.

Generally, a widow is entitled to dower in the equity of redemption of an es-
tate mortgaged by her husband before coverture : but she cannot enforce
her claims, at law, against the mortgagee or those claiming under him.   If
there has been an entry under the mortgage after forfeiture, or the equity
of redemption has been released by the husband to the mortgagee or those
claiming under him, the widow is not entitled to recover at law.

The case of Collins v. Torry, 7 Johns. R. 278, and Coates v. Cheever, 1 Cow-
en, 475, reviewed and questioned.

It seems, that the remedy of the widow in such case is only in equity, where
by paying a due proportion of the mortgage debt, her rights will be pro-
tected.

. To dispense with proof of the hand-writing of a subscribing witness, his re-
moval from the state must be shown by the evidence of a person residing
at the place of his former residence or by information thence derived.

A co-obligor is not permitted to prove the execution of a bond, unless after
due diligence the party has failed to obtain proof of the hand-writing of
the witness.

To prove the existence of a muniment of title, evidence by a witness of an
entry made by him from papers before him, of the existence of such docu-
ment, is admissible, although when testifying the witness has no recollec-
tion of the paper, other than what is derived from the entry.

THIS was an action of *ejectment for dower*, tried at the
Yates circuit, in November, 1836, before the Hon. DANIEL
MOSELEY, one of the circuit judges.

The plaintiff claimed to recover *dower* in the premises in
question, as the widow of Dennis Van Dyne, with whom
she intermarried in 1824.   On the 15th December, 1818,
the premises in which dower was claimed were conveyed
to her · husband by one Morris Seely ; her husband took  .
possession and remained in until 1829, when he quit, leaving
a person in possession as his *tenant ;* her husband died in
1832.   The defence set up was, that Van Dyne on taking
his deed, executed a *mortgage* of the premises in question to
one George D. Stewart, as part consideration of the purchase,
conditioned for the payment of $2512 in instalments, *the last
instalment falling due in June,* 1824, that the possession of
the premises had been surrendered by the mortgagor in his
lifetime to the *heirs* of George D. Stewart, and that the pres-
ent defendant held under them.   To prove the *mortgage*

*debt* the defendants produced a bond of the same date with the mortgage, purporting to have been executed to George D. Stewart by Van Dyne and one George Adair, in the presence of one William Shattuck, as a subscribing witness. To authorize proof of his hand-writing the defendant called a witness who testified that he had understood that Shattuck resided in Warren, in the state of Pennsylvania, and that he removed there several years previous to the trial. The attorney for the defendant testified that he had been *inform-ed* that Shattuck lived in Warren, that he had corresponded with him about two years before the trial, and *understood* and *believed* that he still resided there, not having heard of his removal. On his cross examination he stated that Shat-tuck formerly resided in the town of Prattsburgh, in this state, that he understood he removed from thence to War-ren betwen three and four years before the trial, and that he had not sent to Prattsburgh to make inquiries for him. On this evidence the defendant claimed the right to prove the hand-writing of Shattuck. The plaintiff objected, 1. Be-cause the defendant had not shown enough to authorize such proof; and 2. That for aught appearing the co-obligor was within the jurisdiction of the court, and he ought to be call-ed to prove the bond in preference to proving the hand-writing of the subscribing witness. The judge overruled the objection, and permitted the hand-writing of the witness to be proved and the bond to be read to the jury. To prove the existence of the *mortgage*, the defendant relied amongst other testimony, upon the evidence of one Ebenezer B. Jones, who testified that in the fall of 1828 he assisted in making an *inventory* of the estate of George D. Stewart and of Samuel Stewart, who were both deceased, and who when living had been general partners. The inventory was pro-duced, and on it was an entry in these words: " Mortgage, Dennis Van Dyne and George Adair, 15th December, 1818, $1325,92," the sum being in a column headed " Amount due." The witness stated that after the decease of the Stewarts, he had charge of their papers, that the entry in the inventory was made by *him* from *papers before him* at the time, but that at the time of his testifying he had no re-

collection of the mortgage other than what he received from the entry in the inventory ; this evidence was objected to as inadmissible, and the objection was overruled,   There was much other evidence as to the existence of the mortgage, but eventually from the position assumed by the plaintiff on the trial, its existence was *virtually conceded.*  The question of fact principally controverted, was in relation to *a release of the equity of redemption* alleged by the plaintiff to have been executed by her husband to the heirs of Stewart in consideration of a discharge from the mortgage debt ; whereby she contended that the mortgage was extinguished, that the heirs of Stewart were in possession *as purchasers* and *not under the mortgage,* and that consequently she was dowable.   On the other hand, it was strenuously insisted by the heirs of Stewart that such release had *not* been executed.   The court, as will be seen in the opinion pronounced in this case *assume that such release was executed* by the husband of the plaintiff.   The judge charged the jury that it was immaterial whether the heirs of Stewart entered under a deed or not, if they entered claiming under the subsisting lien of the mortgage ; and instructed them that if they were satisfied that the alleged mortgage had been executed by Van Dyne, that the same had become forfeited, and that the defendant was in possession under Stewart's heirs, that the defendant was entitled to a verdict.   The plaintiff excepted to the charge.   The jury found for the defendant, and the plaintiff now moved for a new trial on a case made.

*J. A. Spencer,* for the plaintiff.

*H. Welles,* for the defendants.

*By the Court,* COWEN, J.   The testimony by which the non-residence of Shattuck was sought to be established, in order to let in proof of his hand-writing fell, I think, altogether short of the object.   Mr. Oliver *had understood,* and Mr. Welles *had been informed,* that he had removed from Prattsburgh, his former residence in this state, to Warren, in Pennsylvania ;   and that he so removed several

years ago, and Mr. Welles added *he understood and believed*
that he still resided there.   He corresponded with him about
two years before ; but where the letters purported to be
post marked or dated, or what information he had derived
from them in respect to Shattuck's place of residence, we
are not informed.   For aught we learn the witnesses may
have *understood* and *been informed* by the defendant himself
so as to raise a belief in their minds.   Diligent inquiry at the
former residence of the witness, and information from his
former neighbors as to his removal and place of settlement,
if out of the state, would be a sufficient excuse ; because
no party conld reasonably be required to go farther in pursuit
of a witness under such circumstances.   It would be much
the same thing, if without inquiring particularly one of his
former neighbors should himself prove the reputed removal
and settlement, or one of the witness' family connections,
or if the witness himself by letter or otherwise, should state
his place of permanent residence.   Due diligence, and
such as would govern a  prudent man in a sincere search
after the witness, must form the standard in these cases.
Information derived from no body knows whom, or belief
taken up, for aught we know, upon mere conjecture is cer-
tainly not enough.   *Pelletreau* v. *Jackson*, 11 Wendell, 123,
124.   *Jackson* v. *Cody*, 9 Cowen, 140, 149.   *Mills* v. *Twist*,
8 Johns. R. 121.

   The circumstance that Adair the co-obligor was not pro-
duced, adds no force to the objection.   Had the absence of
Shattuck been duly established, the proof of his hand-writing
would have been properly receivable ; and it has been held
essential to take that course, as furnishing the testimony
next in degree below the subscribing witness on the stand.
*Pelletreau* v. *Jackson*, 11 Wendell, 123, 4 ; S. C. on error,
by title of *Jackson* v. *Waldron*, 13 Wendell, 188.   Adair's
testimony might have been received as auxiliary, or come
in as next in degree to that of the hand-writing of Shattuck,
had the party failed in finding proof of that.   Idem.   This
seems to form an exception to the general rule, which is,
that *there are no degrees in secondary evidence.   Brown* v.
*Woodman*, 6 Car. & Payne, 206.   See another exception

ALBANY,
January, 1838.

Van Dyne
v.
Thayre.

in *Hilts* v. *Colvin*, 14 Johns. R. 182. This motion, how-
ever, not being founded on a bill of exceptions (for though
exceptions are stated as having been made, the judge's
name and seal are wanting) but on a case, and the proof of
the mortgage, which constituted the substantive ground of
defence, being very full and satisfactory, independent of the
bond, we shall hardly grant a new trial on account of the
error in allowing the secondary proof of that, provided there
be no more important mistake in any other part of the case.
The existence of the mortgage was proved by the deliber-
ate conduct and admissions of Van Dyne, both before and
after the marriage, see 14 Wendell, 234, which, connected
with other circumstances clear of the bond, leave no doubt
upon the mind. To be sure, the defendant was put to the
necessity of proving the mortgage also by secondary evi-
dence; but the loss was so completely made out as to leave
no room for disputing the propriety of receiving that class of
evidence. The bond was but an additional circumstance, of
considerable importance it is true; but its deduction can by
no means overthrow or seriously impair the force of the
remaining whole.

The same remark might with equal propriety, if neces-
sary, be made as to the proof of the memorandum by Jones.
He made the inventory of Stewart's estate from papers be-
fore him, and among other claims, inserted a mortgage
(which he now cannot find) from Van Dyne and Adair.
This was but a circumstance; yet still if we were put to
the necessity of relying upon it as a part of the testimony
to make out the existence of the mortgage, the question of
its admissibility would deserve much more serious considera-
tion, than it can call for as related to a mass of testimony
entirely satisfactory, without that or the bond. It was
however material as strengthening the other proofs in the
cause, and as I incline to think, receivable with them. The
memorandum was an original entry in the book produced,
made by Jones in the course of his business for the Stewart
estate, from papers before him. He had forgotten all about
the particular paper, the mortgage, and could not speak in-
dependently of the entry. Upon this, as I collect from the

case, the memorandum was received in evidence. Had he added that though he had now forgotten the particular paper, yet he entertained no doubt that his entry was true ; then, as I understand the rule, it might have come in the same as any other attestation. A man says, " here is my name as a subscribing witness to a deed. I remember nothing of placing it there ; but I never would have done so had I not seen its execution ;" it is every day's practice to receive a deed, the execution of which is proved in this way. And there are many authorities which consider memoranda so proved as standing on the same footing. Under what circumstances and with what limitations they may be received, we had occasion to consider at large in the late case of *Merrill* v. *The Ithaca & Owego Rail Road Company*, 16 Wendell, 595, et seq. The declaration of the witness that he made the entry from papers which he actually had before him, I consider quite equivalent, if not more than equal to the declaration supposed of the attesting witness.

The remaining question respects the charge of the judge : that though Stewart's heirs may have entered under a deed, yet if they also claimed under the mortgage, they are protected against this claim of dower in the husband's equity of redemption. If a deed or lease of the husband's equity of redemption to the mortgagee or his heirs, have the effect to destroy all claim under the former and paramount fee arising upon the conveyance by mortgage, there can be no doubt that such mortgagee or his heirs would be estopped, like any other grantee of the husband, to deny the widow's right of dower. It is equally clear on the other hand, that where one comes in either as mortgagee, or under a foreclosure, he can hold against the widow ; in the former case qualifiedly, in the latter absolutely. *Van Dyne* v. *Thayre*, 14 Wendell, 233. The case presented by this defence is that of a deed and an entry under it, accompanied with the declaration of an intention still to cling to the mortgage as a protection against liens, which might by priority of time overreach the deed. The power and right to accept a deed and enter thus qualifiedly would be perfectly

clear in equity. *James* v. *Morey*, 2 Cowen, 246, 285, 287, 300, 303, 4, and the cases there cited, with several cases which will be hereafter noticed. See also *Freeman* v. *Paul*, 3 Greenl. 260. But we are sitting in a court of law, and are put to inquire how far we can sanction the defence in this place.

That the widow is dowable of an equity of redemption is agreed perhaps in all the states of the union. 4 Kent's Comm. 44, 3d ed. and the cases and statutes there cited. *Walker* v. *Griswold*, 6 Pick. 416. When that is to be treated strictly as an equitable estate, her proper remedy is in a court of chancery. See 4 Kent's Comm. 44, 3d ed. and the cases there cited. But she also has a remedy at law in all those cases where this estate can be properly considered as legal. *When* it is so, and to *what extent*, and under what restrictions the legal remedy is applicable, it becomes proper to inquire.

There can be no doubt that a conveyance in any form, of the husband's equity of redemption, though it arose upon a mortgage given by him before coverture, would be altogether ineffectual as a bar of dower, when set up by his *mere assignee* against his widow. As between the widow and assignee, the equity of redemption would be looked upon as a legal estate. Being disconnected with the title of the mortgagee, he shall never, in answer to a claim of dower, be allowed to set up the mortgage as an outstanding title. As a defendant claiming under the husband by a conveyance subsequent to the coverture, he stands absolutely estopped to deny the paramount right of the widow. In short, the mortgage is, for all purposes of defence, to him a non-entity. *Harrison* v. *Eldridge*, 2 Halst. 392. *Snow* v. *Stevens*, 15 Mass. R. 278. *Barker* v. *Parker*, 17 id. 564. All this was held, too, in *Hitchcock* v. *Harrington*, 6 Johns, R. 290, and *Collins* v. *Torry*, 7 id. 278, and to all this, there can obviously be no objection. Both those cases and all the cases at law agree, however, in the qualification, that as against the *mortgagee*, the husband is not so seized that his widow can claim dower; and they introduce, I think, even a farther qualification, that if the mortgagee shall have entered for

condition broken ·or foreclosed, the seizin is destroyed and
the husband's assignee could then defend himself on the
ground of an outstanding title.   Chancellor Kent says, 4
Kent's Comm. 45, 3d ed., "as against the title under the
mortgage the widow has no right of dower, and the equity of
redemption is entirely subordinate to that title."   Accordingly
when this cause was here before, the deed from Van Dyne to
Stewart's heirs being out of question, the court after holding
that Van Dyne's admissions, though made during coverture,
were receivable against his widow as secondary evidence of
the mortgage, put the defence on the simple and consistent
ground that the mortgagee's heirs *having entered under the*
*mortgage*, and the defendant claiming under them, his title
was clearly the better one.   Indeed all seizin in the mortgagor
was thus utterly subverted.   Under these directions the cause
went down to a second trial.

On the second trial, which is now under review, after the
mortgage was shown, and that it was forfeited, and that the
heirs of the mortgagee had entered, the plaintiff sought to
defeat the effect of this evidence, by proving in reply that
not only was there a mortgage unsatisfied to a large amount,
but that her husband had besides given to Stewart or his
heirs an absolute deed in· fee to satisfy the debt under a
mutual arrangement between the parties, and that the heirs
entered under that deed.   To an unsophisticated mind, such
an answer would seem to be a most extraordinary one; yet
these very heirs seem, from the beginning to the end of this
cause, to have shrunk from the deed as an instrument of de-
struction.   It was kept entirely out of view on the first trial;
and now after the second they make a point that there was
no deed in evidence; and the plaintiff insists, with apparent
triumph, that by the operation of this deed she stands an un-
incumbered claimant of that dower which she could have
taken only in a qualified way had the mortgage been left to
stand alone.   All this too is claimed as the result of *Hitchcock*
v. *Harrington* and *Collins* v. *Torry*, or more particularly of the
latter case when taken in connection with the general doctrine
of merger as established in *James* v. *Johnson*, 6 Johns. Ch.
R. 423, and recognized in the S. C. by the title of *James*

ALBANY,
January, 1838.

Van Dyne
v.
Sayre.

v. *Morey*, 2 Cowen, 246. It seems to me here has been some misapprehension at least, of the decided scope of the authorities. With regard to the latter case and its kindred class of decisions, they merely hold that at law and generally in equity, the union of a legal and equitable estate in the same person, (like that of the estate of the mortgagor and mortgagee in this instance,) extinguishes, or as the phrase is, merges the equitable in the legal estate. 4 Kent's Comm. 101, 2, 3d ed. and the cases there cited. In other words, as I understand it, the legal estate becomes absolute. This notion was applied exactly in that way by Mr. Justice Story, in *Dexter* v. *Harris*, 2 Mason, 531, 539. "At law," says he, "by the mortgage a conditional estate in fee simple passed to the mortgagee; and the only operation of the conveyance of Aldrich [of the mortgagor's title to the mortgagee] would be to extinguish the equity of redemption, and thus remove the condition. If that conveyance was good, it had the effect, not to enlarge the estate, but to extinguish a right. It was not the drowning of a lesser in a greater estate, for the estate was already a fee simple; but it was an extinguishment of a condition or equity." The same was held in *Carll* v. *Buttman*, 7 Greenl. 102. Such an effect, I should apprehend, would do very little injury to Stewart's mortgage here. It does not necessarily even extinguish the debt. *Spencer* v. *Harford's ex'rs*, 4 Wendell, 381. The upshot is, that the mortgagor released all his right in the equity of redemption, and the heirs enter under an absolute instead of a qualified title. The dispute is about words. All this is called a *merger;* of what? of the legal estate? Who ever heard of a legal estate being merged in an equitable? The legal estate is always too strong for that. No one will say that both estates are merged. It would be still more extraordinary that one holding in himself all legal and all equitable right should be upset by the very perfection of his title; and yet it is said *that* was held in *Collins* v. *Torry*. In that case the demandant's husband conveyed the equity of redemption to Parsons, who conveyed to Winston, who conveyed to the defendant with warranty. Winston's *administratrix* purchased and took an assignment of the mort-

gage ; and the court do say that such an union worked an extinguishment of the mortgage. Had Winston *himself,* who held the fee, taken the assignment, it would certainly, within all the cases, have extinguished the equity of redemption and carried the title to him. In that sense the mortgage would have been extinguished, as the court say, because the fee would have become absolute. That very point was held in *Gibson* v. *Crehore,* 3 Pick. 475 ; 5 id. 146, S. C. and S. P. There, under an order of court, the husband's administrators conveyed his equity of redemption to the defendant, who purchased and took an assignment from the mortgagee, and then the widow came for her dower absolutely, as in *Collins* v. *Torry.* All our cases of dower and merger were cited in her support. The court repudiated her claim at law : Parker, Ch. J., said, in 3 Pick. 480, 481, if she were right in her claim the defendant would be a great sufferer, and the widow would gain an unjust advantage. He adds, " Several cases have been cited to show that widows are entitled to dower in the equity of redemption of mortgaged estates ; and without doubt they are *against all but the mortgagee* and those claiming under him, and they may enforce their claims at law. So also if the mortgage is discharged by the husband in his lifetime, or by his executors or administrators out of the proceeds of his estate, the right of the widow which had been suspended, revives, and she may proceed to recover her dower, just as if there had been no mortgage. But *against the mortgagee* or his *assignee,* her right is only in equity, and it is only by a bill in equity, and by paying her due proportion of the debt, that she can avail herself of her right," &c. The chief justice mentions a still stronger and more decisive case from 8 Mass. R. 491, *Sopkin* v. *Bumstead,* which I will also state in his words : " The assignee of the mortgagor paid the debt to the mortgagee, and the latter entered a discharge of the mortgage on record ; but the widow was held not entitled at law to her dower, because it would be to defeat the very purpose of the payment by the assignee, which was to give assurance to his own title." In *Coates* v. *Cheever,* 1 Cowen, 475, the case of *Collins* v. *Torry* is recognized as

ALBANY,
January, 1838.

Van Dyne
v.
Sayre.

holding that a purchase of the equity of redemption and entry into posession, followed by an assignment from the mortgagee to the purchaser, shall extinguish the mortgage and entitle the widow to dower: and the court followed the doctrine to that extent, without going back to look at the nature of the extinguishment. The case there adjudged is not like the one now before us, but it certainly shows *Collins* v. *Torry* as well as itself to be in conflict with the cases decided by the supreme court of Massachusetts, which appear to me to contain the true doctrine. The more *Collins* v. *Torry*, on which *Coates* v. *Cheevers* was founded, shall be considered, the more, I venture to say, it will be found to have been without full consideration. In truth, there is no merger or extinguishment presented by that case, in any sense of the term. The legal and equitable estates never were united in the same person, unless we should hold that land descends to the personal representative. Winston, an assignee of the husband, having conveyed the equity of redemption with warranty to the defendant, died, and his *administratrix*, not his *heir*, purchased and took an assignment from the executors of Fonda, the mortgagee. I admit this was probably done to save her husband's estate from liability on the warranty to the defendant. It is strange that an act thus done in good faith and with intention to save the estate, should have been made the very ground of a recovery against her deceased husband's grantee. If there be anything in the cases when they say that the equitable sinks into the legal estate, and the latter thereby becomes strengthened or becomes absolute, then all the cases which have ever been adjudged concur in principle to one end: they all concede that as *against the mortgagee* or his *assignee*, or any one claiming under him, there can be no dower in an equity of redemption. 4 Kent's Comm. 45, 3d ed. and the cases there cited. What is the estate of the husband at law as against the mortgagee, even while in actual possession under this equity of redemption? At most he is a tenant at will, and after he shall have parted with all that right by assigning his equity to the very mortgagee, it sounds most extravagant to say that such an act shall add

to his estate. Such is the consequence, if we allow the plaintiff's argument; for the widow claims out of that estate. If the husband had done his worst, the heirs of Stewart, by entering as mortgagees, could hold in despite of the plaintiff. By doing better, conveying all his interest and turning the mortgage to the heirs into an absolute fee, it is insisted that the fee thus created runs back into himself and creates a seizin whereof his widow is dowable. To my mind this is a new mode of conveyance, where a man in doing all he can to convey his estate becomes himself the grantee. I am sure that in parity of reasoning his heirs might have ejectment; but there is no pretence for such a consequence. If it does not add to, it certainly does not diminish the estate of the heirs. *Stoppelbien* v. *Shulte*, 1 Hill's Cas. on Ap. 200.

But the principles so well supported by reason and authority have been directly applied by this court to a case which cannot be distinguished from the case at bar. In *Jackson, ex dem. Bruyn*, v. *Dewitt*, 6 Cowen, 316, it was held that the husband may release the equity of redemption to the mortgagee or his assignee, and thus extinguish the wife's dower. This court held, in the spirit of all the cases, that so far from reacting for the benefit of the widow, such a release to the assignee of the mortgagee who held the legal estate, did to be sure extinguish the mortgage, but it made the legal estate absolute. It is true the case is slightly distinguishable in its details. The husband had purchased and given back the mortgage to secure the purchase money before coverture, and the court say, on the authority of *Stow* v. *Tift*, 15 Johns. R. 458, that he was seized but for an instant. The simple amount of the case is, however, precisely like all others which are raised against the mortgage. The husband was disseised; how? By a conveyance of the legal estate to the mortgagee. What possible difference whether he was seized and disseised the same day, or seized one day and disseised ten years after, if both seizin and disseisin were before the coverture? None at all, and so it was held in *Bird* v. *Gardner*, 10 Mass. R. 364. I repeat again, on all the authorities, that, as *against the mortgagee*, there is no seizin. Entry or foreclosure is a bar, and the

two cases last cited hold that a release of the equity of redemption by the husband is equivalent to a foreclosure. Strange he should not be allowed to do thus voluntarily what a court of chancery would decree. My deduction from this and other cases, I state in the words of Chancellor Kent, 4 Comm. 45, 3d ed. "The wife's dower in an equity of redemption only applies in case of redemption of the incumbrance by the husband or his representatives; and not when the equity of redemption is released to the mortgagee or conveyed." And see *Bolton* v. *Ballard*, 13 Mass. R. 227, and *Reed* v. *Morrison*, 12. Serg. & Rawle, 18. Remember. we are speaking in a court of law, to which we professed in the outset to limit our inquiries. If there be a remedy for dower against the mortgagee in any case, or those claiming under him, it is extremely proper that the widow should be confined to a court of equity; and that distinction has recently been held in the case of *Smith* v. *Eustis*, 7 Greenl. 41, 43, upon a consideration of many authorities; again in *Carll* v. *Buttman*, id. 102. And in *Gibson* v. *Crehore*, the plaintiff failing at law, 3 Pick. 475, was afterwards relieved in equity, 5 id. 146. That a case of this kind may often be open to very complicated equities and altogether unfit for a court of law, is plain enough on the least reflection; and it is strikingly illustrated by the last cited case. See also *Eaton* v. *Simonds*, 14 Pick. 98.

It follows, that in any view, the charge of the circuit judge was altogether unobjectionable on the part of the plaintiff. I entertain no doubt that he would have been right in putting the matter to the jury without regard to the entry being under the mortgage. The case is all which it was when here before. Mr. Justice Nelson then said, "I have no doubt it was competent for the heirs to set up their possession as representing the legal estate in the mortgaged premises." I add, such a right in the heirs is made stronger, it is not necessary to say precisely how much stronger, by the deed which the plaintiff now insists upon.

A new trial must be denied.