Cohn v. Hoffman.

## COHN v. HOFFMAN.

1. PRACTICE IN CIRCUIT COURT: *Waiving exceptions: Going to trial.*
 A defendant does not waive his exceptions to the ruling of the circuit court, sustaining a demurrer to part of his defenses, by going to trial on others held good.

2. MORTGAGE: *Ejectment by purchaser of equity of redemption.*
 A purchaser of mortgaged land at a sale under execution issued upon a judgment rendered against the mortgagor since the recording of the mortgage, acquires only the mortgagor's equity of redemption, and cannot maintain ejectment against the mortgagee in possession after breach of the condition of the mortgage. His remedy is by bill in equity to redeem.

3. PLEAS: *Each stands alone.*
 The sufficiency of a plea must be determined by what it contains, not by reference to other pleas.

4. MORTGAGE: *Merger with equity of redemption: Intervening lien.*
 The mortgagor's sale of the equity of redemption to the mortgagee, does not merge the mortgage so as to let in an intervening lien upon the mortgaged property. The mortgagee's title dates from its inception, and the effect is to extinguish the equity of redemption.

Cohn v. Hoffman.

5. · HOMESTEAD: *Exemption under Constitution of 1874.* ·

   A judgment upon a note executed since the adoption of the Constitution of 1874, for a debt contracted prior thereto, is a lien on the debtor's homestead.

APPEAL from *Jackson* Circuit Court.

Hon. R. H. POWELL, Circuit Judge.

*U. M. & G. B. Rose* for Appellants.

The demurrer admitted all the allegations of the paragraphs of the answer demurred to, and by going to trial the defendant did not waive his exceptions. *Collins v. Karatopsky, 36 Ark., 317.*

   The court evidently proceeded from the supposition that upon the purchase by Cohn of the equity of redemption, his mortgages became merged in the fee. This was erroneous. In order to preserve the lien of the mortgages against the lien of the subsequent judgment held by the plaintiff, it was necessary that the merger should not take place ; and, in such case, the law is that the mortgage shall not merge in the fee, but will be kept outstanding. This is the law, because otherwise, the mortgagee would lose the benefit of his prior lien without any fault on his part, and without any merit in the intervening incumbrancer. *James v. Morey, 2 Cowen, 246; Millspaugh v. McBride, 7 Paige, 509; Barker v. Parker, 4 Pick., 505; 1 Jones on Mortgages, Secs. 857, 868, 870; Hunt v. Hunt, 14 Pick., 374; Grover v. Thacher, 4 Gray, 526; N. E. Jewelry Co. v. Merriam, 2 Allen, 390; Thompson v. Chandler, 7 Greenl., 377; Mulford v. Peterson, 35 N. J. L., 127; Hartshorn v. Hartshorn, 1 Greenl., 350; Freeman v. Paul, 3 Greenl., 260; Mallory v. Hitchcock, 29 Conn., 127; Walker v. Baxter, 26 Vt., 710; Baldwin v. Norton, 2 Conn., 161; Stanton v. Thompson, 49 N. H., 272; Simonton v. Gray, 34 Maine, 50; Marshall v. Wood, 5 Vt., 250; Hutchins v. Carlton, 19 N. H., 487.*

" The general rule is that where the title to land and the ownership of the mortgage debt become vested in the same person, the mortgage is thereby merged and extinguished; but if the owner of the legal and equitable titles has an interest in keeping those titles distinct, as, for instance, where there is an intermediate incumbrance, he has a right so to keep them, and the mortgage will not be extinguished." *Thomas on Mortgages, p. 130.*

Cohn was, therefore, a senior mortgagee in possession after the condition was broken, and could not, of course, be ejected by a subsequent purchaser. The right of redemption was all that remained to the latter. *Fitzgerald v. Beebe, 7 Ark., 311; Gilchrist v. Patterson, 18 Ark., 575.* The court erred in rendering judgment for $500 damages when only $250 were alleged or demanded. *Hudspeth v. Gray, 5 Ark., 157.*

The court erred in admitting the sheriff's deed under which the plaintiff claimed. It had not been recorded and so did not prove itself. No proof of its execution was made. *Wilson v. Spring, 38 Ark., 181: Watson v. Billings, Id., 278; Dorr v. School District, 40 Id., 238.*

The court also erred in admitting the evidence to show that the debt on which plaintiff's judgment was rendered was contracted prior to the adoption of the Constitution of 1874. By the provisions of that Constitution, the plaintiff's judgment, which was rendered in 1878, constituted no lien on Bray's homestead. *Const. 1874, Art. 9, Sec. 3.* By a sale he could place it beyond the reach of his creditors. *Stanley v. Snyder, 43 Ark., 434.*

The court doubtless thought that Bray was entitled only to the homestead rights, which he could have claimed at the time the debt was contracted, but this is not the law. Exemption laws affect not the obligation of contracts, but the remedy. They may be altered at will without infringing the constitu-

tional provision. When the creditor has already acquired a lien, and a law is passed divesting him of it, the law may be held void as interfering with vested rights; but until a vested right of this sort has been acquired, the laws are subject to amendment. *Cooley Const. Lim., marg. p. 287.*

Besides, after the adoption of the Constitution of 1874, a note was taken for the old account. We can see no reason why this note should not be held to be governed by the laws existing at the time of its execution. Just as, in *Hughes v. Ross, 36 Ark., 275,* scrip issued after the adoption of the Constitution of 1874, for indebtedness contracted prior thereto, was held to be subject to its provisions.

*W. R. Coody* for Appellee.

1. The Constitution of 1874 does not change the homestead provisions of the Constitution of 1868, and the judgment lien attaches to all the debtor's property unless it is selected as a homestead. Reviews our homestead and exemption laws, and contends that Bray never having impressed the character of a homestead on the land, or selected it as such, it was subject to the lien, and certainly subject, after sale and abandonment by Bray, to sale under execution. Citing *Thompson on Home. & Ex., Sec. 2, Note 5, Secs. 100, 848, 233, 839, 820; Gould's Dig., p. 504, Sec. 29; Gantt's Dig., Sec. 2635; 22 Ark., 400; 36 Ib., 548–9; 36 Ib., 549; Const. 1868, Art. XII, Sec. 3; 28 Ark., 485; 40 Ark., 357; Const. Ark. 1874, Art. IX, Secs. 3–4; 40 Ark., 74; 43 Id., 107; Ib., 433; 37 Id., 383; Ib., 286; 30 Id., 111; 35 Id., 24.*

2. The exemption extended only to the use and occupancy, which may be waived or abandoned, and not to the fee; and the lien attaches to the fee, when it is sold or abandoned as a homestead. *Thomps. H. & Ex., Secs. 630, 548–9; 26 Barbour, 374; 28 Ark., 492; 30 Id., 576; 29 Id., 280; 31 Id., 148; 37 Id., 298;*

*33 Id., 399; 35 Id., 27; 29 Id., 633; 37 Id., 317; Const. 1874, Art. IX, Sec. 6; Thomps. H. & Ex., Secs. 648–9, 263–4–5, 452, 822–3–4.*

3. It not being alleged in the answer that the homestead is worth less than $2500, only eighty acres can be claimed. *Thomps. H. & Ex., Sec. 103; 33 Cal., 225; 7 Mich., 488.*

4. The debt was contracted under the Constitution of 1868, and its provisions must govern plaintiff's rights and remedies. The note was the mere evidence of the debt. The time when the debt was made is the true date of its contract, and gives the exemptions. *7 Ark., 524; 9 Id., 339; Thomps. H. & Ex., Secs. 12, 311–12–13–14; Const. 1874, Art. IX, Sec. 9.*

5. As to the *merger* relied on by appellant: 1. This is a law proceeding, in which the lesser estate is merged in the greater when united. *1 Jones Mortg., Sec. 848; 2 Cowen, 246.* 2. As to the judgment for damages, that can be cured by remittitur. 3. It is too late to raise the objection here that the sheriff's deed was not recorded. *28 Ark., 8, 11.*

SMITH, J. The premises involved in this ejectment comprise three parcels of land: Lot 1 in S. W. 1-4, Sec. 30; Lot 1 in N. W. 1-4, Sec. 31; and N. 1-2 Lot 2 in N. W. 1-4, Sec. 31, all in Township 11 North, Range 2 West.

The complaint alleged that on September 20, 1873, one Bray was indebted to one Stayton. That the debt remaining unpaid, Bray, on March 27, 1875, executed to Stayton a note for $271. That Stayton afterwards assigned the note to Hoffman, who brought suit on it and, on September 11, 1878, recovered judgment, in the Jackson circuit court, for $364. That on September 6, 1881, a *scire facias* was issued to revive the judgment, and it was revived as of that day. That on September 2, 1881, an execution was issued on the judgment, and

the land sold under it, on October 4, 1881, to plaintiff, Hoffman. That on October 25, 1882, the sheriff executed a deed to the plaintiff for the land. That the defendant withheld the land wrongfully, and that the plaintiff was entitled to $250 as damages for the wrongful detention. The prayer was for the possession and for $250 damages.

· A copy of the sheriff's deed was exhibited with the complaint.

· The defendant, Cohn, filed an answer in seven paragraphs, setting up: 1. That on March 28, 1877, Bray was indebted to one Thompson in the sum of $300, as evidenced by his note of that date, and to secure the payment of said note, he, on that day, executed a mortgage on the second tract above described, which was duly recorded. That this note and mortgage were afterwards, for a valuable consideration, assigned to Cohn. 2. That on June 1, 1877, Bray was indebted to Wishon Brothers on a note for $305.66, and to secure its payment conveyed the third tract above described, to one N. B. Wishon, by trust deed of that date. That said note and trust deed were afterwards assigned to Cohn. 3. That in 1880 the probate court of Jackson county rendered judgment against Bray, as the administrator of one Jenkins, for $798.70, and that this judgment had been assigned to Cohn. 4. That on December 20, 1878, Bray owed Cohn $600, for which he executed his note, and to secure the note executed a trust deed to one Mark Cohn, conveying the second of said tracts. 5. That on December 1, 1880, Bray owed Cohn $300 more, and to secure its payment executed to said Mark Cohn another trust deed on the south half of the tract first described. 6. That all of said debts were due before April 1, 1881. That on that day Bray was indebted to Cohn in a still further sum. That in payment of this last named sum and of the trust deed, Bray conveyed to Cohn his equity of redemption. 7. The answer also denied that the judgment, under which plaintiff claimed, was a lien on the lands;

alleged that the second and third tracts, containing 154 19-100 acres, were held by Bray as a homestead. Denied that the debt was contracted prior to 1875, and denied that the lands had been lawfully sold. The answer also contained a general denial of the plaintiff's title and right to recover.

Cohn's title papers were properly exhibited with the answer, except the release of the equity of redemption set up in paragraph 6.

The plaintiff demurred to the first six paragraphs. The demurrer was sustained. The defendant excepted and rested upon his defenses as stated. Upon the remaining issue a trial was had before the court without a jury, and judgment was rendered in favor of the plaintiff.

The testimony showed that the debt to Stayton was contracted in the year 1873, and the court so found. It declared the law to be: That the rights of Hoffman were to be determined by the law as it existed when his debt was contracted, and that his judgment was a lien prior to that of Cohn, upon all the lands in controversy. The defendant filed a motion for new trial, saving all the points. The motion being overruled, the defendant excepted, took a bill of exceptions, which was filed as part of the record, and appealed.

1. PARTIES: Waiving exceptions.          By going to trial on the issue joined upon the seventh paragraph, the defendant did not waive the exceptions he had previously reserved. *Collins v. Karatopsky, 36 Ark., 317.*

2. MORTGAGE: Ejectment by vendee of mortgagor.          The circuit court erred in adjudging the first and second pleas to be insufficient to bar the action. The conveyances set up in these pleas were of record before the plaintiff obtained his judgment. The defendant was a senior mortgagee in possession after condition broken and could not be evicted by a subsequent purchaser. The pleas constituted a perfect legal defense, and the plaintiff's only remedy was to file a bill in equity to redeem the mortgages; the only interest that he ac-

Cohn v. Hoffman.

quired in the mortgaged premises by his purchase under execution being Bray's equity of redemption.

The judgment below evidently proceeded upon the theory that, as Cohn's sixth plea alleged he had afterwards purchased the equity of redemption, such purchase merged the mortgage so as to let in the judgment lien upon the estate of the mortgagee. But the sufficiency of pleas must be tested by what they contain, not by reference to other pleas. But even if the pleas had shown a release by Bray of his interest, subsequent to the rendition of the judgment, we are not prepared to admit the legal consequences deduced by the court. It would be a harsh rule which should punish the mortgagee by the loss of his prior lien without any fault in him, and without any merit in the intervening incumbrancer. The plaintiff's counsel has cited no case that goes so far, and we are aware of none. If there is any merger in such cases the equitable title is drowned in. the legal title conveyed by the mortgage; the mortgagee's title dates from its inception, and the effect is to extinguish the equity of redemption. *Dexter v. Harris, 2 Mason, 531, per Story, J.; Mulford v. Peterson, 35 N. J. Law, 127; Stanton v. Thompson, 49 N. H., 272; Hunt v. Hunt, 14 Pick., 374.*

*3. Pleas:— Each stands alone.*

*4. Mortgage: Merger with equity of redemption: Intervening lien.*

The third plea deserves no consideration.

There was no error in sustaining the demurrer to the fifth plea. The first mentioned tract of land was not a part of the homestead, according to the averments of the answer, and there can be no doubt it was bound by the judgment.

The fourth and sixth pleas are manifestly bad, provided Hoffman's judgment was a lien on Bray's homestead. The conveyances therein relied on were subsequent to the judgment.

*5. Homestead: Exemptions in Constitution of 1874.*

The testimony leaves no doubt that the debt was contracted while the Constitution of 1868 was in force. It is of no consequence that the debtor, after the adoption of the present

Constitution, made his note in settlement of the pre-existing debt. The debt remained one and the same, although the evidence of its existence was contained, at one time, in an account, later in a note, and lastly in a judgment. *Nowland v. Lanagin, 45 Ark.*

Stayton, then, or any successor to his rights, might look to the homestead for the ultimate satisfaction of the debt.. For the Constitution of 1868 protected only the occupancy of the debtor. The judgment lien attached to the homestead as well as to all of his other lands in that county. The judgment creditor could not sell the homestead as long as Bray resided upon and claimed it in the manner designated by law. But the land could not be alienated to his prejudice. The purchaser would take subject to the incumbrance. If Bray abandoned his residence upon .it, it became immediately subject to seizure and sale. And if he died, it was assets for the payment of his debts, subject to certain homestead 'rights in his widow and minor children, which rights were limited in point of time. So that if the creditor used due diligence in reducing his claim to judgment before Bray had parted with his interest, and in keeping the judgment lien alive, the land must eventually and inevitably be subjected to the payment of the debt. *Norris v. Kidd, 28 Ark., 485; Chambers v. Sallie, 29 Id., 407; Jackson v. Allen, 30 Id., 111.*

But *Sec. 3, of Art. IX, Constitution of 1874,* ordained that: "The homestead of any resident of this State, who is married or the head of a family, shall not be subject to the lien of any judgment, or decree of any court, or to sale under execution or other process thereon."

And it is argued that this provision prevented the judgment, given in 1878, from becoming a charge upon Bray's homestead. Now, exemption laws do not affect antecedent contracts. This has been so frequently decided that it is an axiom in American

jurisprudence. *Bronson v. Kinzie, 1 How., 311; Gunn v. Barry, 15 Wall., 610; Edwards v. Kearzey, 96 U. S., 595.*

The legislature of a state may, indeed, prescribe the remedies to be pursued by creditors in the vindication of their rights. But " statutes pertaining to the remedy are merely such as relate to the course and form of proceedings, but do not affect the substance of a judgment when pronounced." *Morton v. Valentine, 15 La. Ann., 150.*

The legislature cannot, under the guise of regulating the remedy, take away or impair the right. The two are so closely interwoven as to be often inseparable. *Green v. Biddle, 8 Wheat. 1.*

Now the Constitution of 1874 withdraws the homestead from involuntary sales, and places it beyond the reach of ordinary creditors as completely as if it were situated in another planet. It enumerates the various methods by which judgment creditors may get at the land, and then excludes them all. They have no lien upon it. They cannot seize it nor sell it, The debtor may sell, exchange, or give it away, and his creditor has no cause of complaint. *Stanley v. Snyder, 43 Ark., 434.*

If the constitutional provision has any application to antecedent debts, it does very materially impair the obligation of Bray's contract with Stayton. The contract falls into the class of those imperfect obligations which depend for their fulfilment upon the will and conscience of those upon whom they rest. Stayton or his assignee may get a barren judgment for the debt, but there is no means of enforcing it. The judgment is no lien on the homestead, therefore Bray may alienate it without injury to him and without the possibility of his following it into the hands of the purchaser.

But in our opinion the constitutional convention of 1874 never intended such a result. For the instrument which they framed expressly declares that: " The exemptions contained

24——45

in the Constitution of 1868 shall apply to all debts contracted since the adoption thereof and before the adoption of this Constitution." *Art. IX, Sec. 9.*

This debt was contracted within the time specified. Consequently the Constitution of 1868 governs, not only as to the right of the plaintiff, but also in regard to such remedies as are necessary to make that right effectual.

This view is confirmed by *Section 1, Schedule to the Constitution of 1874,* that: "All laws exempting property from sale on execution or by decree of a court, which were in force at the time of the Constitution of 1868, shall remain in force with regard to contracts made before that time."

Thus exemptions of the homestead from forced sales under judgments obtained upon contracts prior to the adoption of the Constitution of 1868 are governed by the Act of 1852. *Lindsay v. Merrill, 36 Ark., 545.*

To the north half of the other tract, the defendant has exhibited no title at all; and to the south half thereof, only such a title as is clearly inferior to the plaintiff's. We should not hesitate to affirm the judgment for this last tract, leaving the action to proceed for the remainder, but for two errors into which the court below fell. The judgment was for twice as much damages as the complaint demanded. · *Hudspeth v. Gray, 5 Ark., 157.* And the plaintiff's deed, which was the foundation of the action and the evidence of the plaintiff's title, was received without proof of execution. If it had been recorded it would have proved itself; but it had never been recorded. *Wilson v. Spring, 38 Ark., 181; Watson v. Billings, Ib., 278; Dorr v. School District, 40 Ark., 238.*

Reversed, and remanded with directions to overrule the demurrer to the first and second defenses, and to give the plaintiff leave to discontinue his action as to the two tracts of land therein mentioned, if he shall be so advised, and to proceed to a new trial in conformity with this opinion.