## ACKER *vs.* CAMPBELL and others.

In a *cash sale* of merchandize in the city of New-York, a vendor is not deemed to have waived the *precedent condition of payment*, where goods are delivered on the two last days of a week, (the delivery on the second day being at an hour too late to send in the bill,) and payment is called for on the following Monday, when the purchaser is found to have *absconded ;* the vendor in such case may reclaim the goods even from a judgment creditor.

*Replevin* in the *cepit* lies against a judgment creditor, or the sheriff acting by his authority, in levying upon such property by virtue of an execution against the purchaser.

ERROR from the superior court of the city of New-York. This was an action of *replevin* for *taking* and *detaining* 28 barrels of flour, brought by Campbell, Wade & Co., the defendants in error, against the plaintiff in error. A special verdict was found by the jury, from which it appears that

Campbell, Wade & Co., transacting business in New-York as flour merchants, on *Friday*, the 2d *February*, 1838, sold to one *Hooker*, a flour dealer in the same city, 28 barrels of flour; the sale was a *cash sale*; a part of the flour was delivered to Hooker on the day of the sale, and the residue on the next day, but too late in the afternoon to send in the bill. On *Monday* the 5th February, previous to ten o'clock A. M., Messrs. Campbell, Wade & Co. sent to Hooker's store for payment, when it was found that *he* had absconded. On the same day *Acker*, the plaintiff in error, as sheriff of the city of New-York, *levied* upon the property in question by virtue of an execution in favor of one I. Rice. The judgment under which the execution issued was entered by confession on the 21st *January*, 1838. Rice was told by a clerk of Campbell, Wade & Co. in the evening of the *third* day of *Feb-*[ \*373 ] *ruary*, of the sale of the flour to Hooker, \*and that he, the clerk, was going on Monday morning to get the money. On Monday, Rice delivered his execution to the sheriff, who at about ten o'clock A. M. made the levy, for the doing of which this action was brought. Hooker had been in business on his own account about six months previous to absconding. The jury found that he made the purchase of the flour with the intent not to pay for it, but acquitted Rice of all participation in the fraud. The court rendered judgment for the plaintiffs, and the defendants sued out a writ of error.

*Dudley Marvin*, for the plaintiff in error, insisted, 1. That the vendors of the flour have voluntarily delivered it to Hooker, without any fraudulent means on his part to induce the delivery, had waived their right to payment as a condition precedent, and the flour became the absolute property of Hooker, subject to be levied upon by his judgment creditors: 2. That the vendors at the time of the levy not having the right to reduce the property to possession were not entitled to sustain the cation of *replevin*; and at all events, could not sustain it in the *cepit*, but should have brought their action for the *detention*.

*S. Sherwood*, for the defendants in error. The sale of the flour being a *cash sale*, the delivery was conditional, and the nonpayment of the price was an act of fraud rendering the whole contract void, and the vendors had a right instantly to reclaim the property. The judgment creditor in whose behalf the sheriff acted had no greater rights than Hooker possessed.

*By the Court*, NELSON, Ch J. There can be no doubt but that a gross fraud was practised upon the plaintiffs below in the purchase of the flour; and that upon principles well settled, and repeatedly applied in like cases, arising out of the usual course of dealing in the city, there was, in judgment of law no change of property or possession by the delivery to Hooker. *Russell v. Minor*, 22 *Wendell*, 659. 7 *Taunton*, 59. 1 *Barn. & Cres.* 514. 4 *Bingham*, 476.

New-York, May, 1840.—Acker v. Campbell.

*The law abhors and avoids every sale infected with fraud, and [ *374 ] disables the guilty party from setting up the contract, or deriving any advantage from the fruits of it. It vitiates every act, however fair in appearance, and though clothed with the forms of law. 3 *Bacon, tit. Fraud*, 294.

It was insisted on the argument that *trespass* would not lie, and therefore *replevin* in the *cepit* would not. Several cases were referred to, and, among others, *Marshal* v. *Davis*, 1 *Wendell*, 109, and *Nash* v. *Mosher*, 19 *id.* 431; but the principle of these and like cases does not apply. There the goods were delivered understandingly to the defendant by one who had the possession and a special property in them; and the law would not regard his possession wrongful any more than that of the bailee. Not being originally tortious, it could become so only by a wrongful detention. In both these cases it is conceded, if the property had been taken by the defendant without the consent of the bailee, *trespass* might have been sustained. Here, in judgment of law, the goods were taken without the consent of the plaintiffs; for that cannot be urged if obtained by fraudulent contrivance. So firmly is this principle rooted, that, notwithstanding the manual tradition of property, the party may be guilty of a felonious taking. 4 *Bing.* 476. 8 *Cowen*, 238. 14 *Wendell*, 31. Wherever an injury has been received from an act which was in the first instance unlawful, *trespass* lies, there being in every such case an implied force. 5 *Bacon, tit. Trespass,* (*A*). I am satisfied the remedy would have been appropriate against Hooker, and, for this purpose, the sheriff stands in no better condition. *Bacon, tit. Trespass,* (*E*). He took the property of a third person not liable to the process.

Judgment affirmed.*

---

* See the case of *Furniss* v. *Hone*, 8 *Wendell*, 247, *et seq.* as to *conditional delivery*, and the opinions of *Senators* ALLEN and TALLMADGE as to the *time* within which goods may be reclaimed.