# PAIGE v. O'NEAL.

Instructions to the jury, which are not embodied in the statement on appeal or bill of exceptions, and are neither certified to by the Judge trying the cause, or signed by him, cannot be the subject of consideration by this Court.

A general challenge of a juror for cause, without specification of the particular grounds, is insufficient. The statute enumerates several different grounds for which such challenges may be taken, and a designation of the one upon which any particular challenge rests, is essential to its consideration by the Court. It is not sufficient to say, "I challenge the juror for cause," and then stop.

Where a jury are instructed to bring in a sealed verdict, and they retire, and after agreeing upon the verdict, seal it up and give it to the officer in charge of them— the Clerk being absent—and request him to give it to the Clerk, which is done; and after the meeting of the Court the following morning, the verdict is opened, in the presence of the jury, and read by the Clerk, without exception: *Held,* That this is not an error sufficient to warrant a new trial. The possession by such officer left the verdict as much in the possession of the Court itself as if it had been directly delivered to the Clerk.

Nor will it make any difference when the names of the jurors were not called and they were not asked, whether they had agreed upon their verdict? Where the parties were present and took no exception at the time; and where it is not pretended that the verdict entered differs from the one sealed up, or that the result is in any respect affected by the omission.

Errors which are immaterial, and do not affect the substantial rights of the parties, are unavailing on appeal, even when the subject of exception, much less so when they are permitted without objection.

No delivery by the vendor of personal property is necessary as against parties who are neither creditors or subsequent purchasers of such vendors.

The Statute of Frauds only requires an actual and continued change of possession as a protection against creditors and subsequent purchasers of the vendor.

Where the property seized by a Sheriff is in the possession of a stranger to the execution, it is not sufficient as a justification of the seizure, to prove the execution only; the judgment upon which it was issued should also be proved.

It is a general rule that when the possession of property is originally acquired by a tort, no demand previous to the institution of the suit for its recovery is necessary. It is only when the original possession is lawful, and the action relies upon the unlawful detention, that a demand is required.

Where the vendee of a lot of wheat released his vendor from all damages by reason of any implied warranty of the title to the wheat, which was then in litigation between the vendee and a third party, such release made the vendor a competent witness.

Nor would the nonpayment of the consideration expressed in the release effect the instrument as a valid release. The obligation to pay the consideration was created by the acceptance of the release, and is not dependent upon the contingency of a recovery in the action.

The declarations of such vendor, made after the sale of the wheat, are not admissible for the purpose of proving that the sale was not *bona fide.*

Where the vendor of personal property acquired his title to the property in fraud of the creditors of *his* vendor, his vendee, for a valuable consideration and without notice of the original fraud, is not effected by the taint of his title. The title, although originally fraudulent, is cured by the subsequent conveyance to an innocent party.

Conveyances of real and personal property, made to hinder, delay or defraud creditors, are subject to the same defect, liable to be avoided at the suit of the creditors, but valid as between the parties, and vest a title which can be transferred perfect to a *bona fide* purchaser for a valuable consideration.

APPEAL from the Fifth District, County of San Joaquin.

This was an action to recover a lot of wheat alleged to have been wrongfully taken by the defendant.

The complaint prays judgment for the possession of the wheat, and also judgment for special damages occasioned by the wrongful taking and subsequent detention.

The answer of the defendant justifies the taking by virtue of a judgment and execution in favor of Samuel Fisher and against E. C. Kelty and G. C. Reynolds. Kelty & Reynolds were the original owners of the wheat, and sold the same to Alonzo McCloud, who, previous to the levy, sold the same to the plaintiff Paige. The answer alleges that the wheat at the time of seizure by the defendant was the property of Kelty & Reynolds; that Kelty & Reynolds' sale to McCloud was fraudulent, and made with the intent to defraud, hinder and delay the creditors of Kelty & Reynolds; that execution was issued upon the judgment and placed in the hands of the defendant as Sheriff of San Joaquin county, and that he seized, as such Sheriff, the wheat, then in the possession of McCloud, as the property of Kelty & Reynolds. No delivery of the wheat at the time of sale, from McCloud to plaintiff, was made. Plaintiff paid, from time to time, nearly all of the purchase money, and occasionally took away small lots of the wheat, leaving the major part in the possession of McCloud. No knowledge was traced to the plaintiff of the fraud in the sale from Kelty & Reynolds to McCloud. The wheat had been in the undisturbed possession of McCloud months previous to plaintiff's purchase.

The cause was tried by a jury.    The plaintiff had verdict and judgment, and the defendant appealed.

The other facts of the case sufficiently appear in the opinion of the Court.

*Gregory Yale* for Appellant.

I. Irregularity of the proceedings of the Court and jury.

1st. The Court erred in overruling the defendant's challenge, for cause shown, to the jurors W. F. McKee, R. W. Stevenson and L. T. Smith.

A challenge of a juror may be reviewed on appeal.    People *v.* Vermilyea, 7 Cowen, p. 108.    This Court has reviewed challenges of jurors on appeal, thus recognizing the right so to.do.    People *v.* Reyes, 5 Cal. 347 ; People *v.* Williams, 6 Cal. 206.

A juror can be challenged for cause, for—" Having formed or expressed an unqualified opinion, or belief, as to the merits of the action."    Practice Act, sec. 162, sub. 6.

A party to a civil action is not entitled to but *four* peremptory challenges.    Practice Act, sec. 161.

2nd. The Court erred in receiving the alleged verdict of the jury, without having their names called, and asked in open court, " whether they have agreed upon their verdict," and requiring them to declare the same.

" The .Court may direct the jury to bring in a sealed verdict at the opening of the Court, in case of an agreement during a recess, or adjournment for the day."    Extract from sec. 170 of Practice Act.

The jury did not bring in the alleged verdict ; it was given to the Coroner, who gave it to the Clerk during the adjournment.

" Sec. 171. When the jury have agreed upon their verdict, they shall be conducted into the Court by the officer having them in charge. *Their names shall then be called,* and they shall be *asked by the Court, or by the Clerk, whether they have agreed upon their verdict ;* and if the foreman answer in the affirmative, they shall, on being required, declare the same."    Practice Act, sec. 171.

The statutory provisions must be strictly followed.    In New York,

under a similar statute, it was so held.   Graham's Practice, 2nd ed., pp. 316 and 317.

A party is entitled to poll the jury where a sealed verdict is brought in, unless he has expressly assented to waive the right.   Jackson v. Hawks, 2 Wend., p. 619.

The defendant did not waive any of his statutory or other rights; on the contrary, we moved to set aside the verdict on this ground at the earliest possible moment.

It is difficult to conceive how a verdict can be objected to, until it is properly in Court?   If our theory is correct, the verdict never was properly given in; and we have only to show that fact to set it aside.

The case of Morgan v. Hugg, 5 Cal. 409, has no application here, for the point was raised in the Court below in this action.

II. Misconduct of jury in handing verdict to Coroner.

We have already shown the duties of the jurors by reference to sections 170 and 171 of the Practice Act.   Instead of giving their verdict to the Coroner, they should have delivered it to the Court, in open Court.

There is no legal verdict but a public verdict, given openly in Court. Root v. Sherwood, 6 Johns., p. 68.

An agreement that the jury may bring in a sealed verdict, does not take away from the parties the rights to a public verdict duly delivered.   Ib.

Until a verdict is received and recorded, the jurors may alter it. Ib.; Blakely v. Sheldon, 7 Ib., p. 32.

III. Excessive damages appearing to have been given under the influence of passion or prejudice.

The jury, in their alleged verdict, say: " We, the jury in the above entitled action, find for the plaintiff, for 2,320 sacks of wheat, ninety-one pounds each:

" 211,120 pounds, 5 cents per pound......$10,556
    Damages........................... 2,500
                                        ——————— $13,056."

There was not any evidence introduced to show the number of pounds each sack contained, or how many pounds the whole number

of sacks would average; yet the jury *presume* each sack contained ninety-one pounds.

Not any evidence was introduced by the plaintiff as to his damages over and above the value of the grain; yet the jury gave the plaintiff *two thousand five hundred dollars* over and above what they find the value of the grain to have been.

IV. Error in law arising at the trial, and excepted to by the defendant.

" The defendant moved that plaintiff be nonsuited upon the following grounds, viz:

" 1st. That the plaintiff had not shown a sale of the wheat in controversy to him.

" 2nd. That the plaintiff had not shown a delivery of the wheat to him.

" 3d. That the plaintiff had not averred in his complaint that a demand was made upon the defendant for the wheat; and,

" 4th. That the plaintiff had not proven that any demand was made upon the defendant for the wheat previous to this action," which motion was overruled. ·

1st. The Court erred in overruling motion for nonsuit. The evidence did not show a sale and delivery; the wheat remained in the possession of McCloud.

Was there such a sale and delivery of the wheat by McCloud to the plaintiff, as is contemplated in the Statute of Frauds? (Compiled Laws, sec. 20.) That section requires the sale to " be accompanied by an immediate delivery, and be followed by an actual and continued change of possession." Compiled Laws, p. 205, sec. 15; Stewart *v.* Scannell, 8 Cal., p. 80. See also, Whiting *v.* Stark, 8 Cal., p. 514; Vance *v.* Boynton, *Ib.*, p. 554.

2nd. There was no allegation in complaint of demand made of defendant, nor any proof of one.

The demand should have been alleged and proven on the trial.

In order to charge a Sheriff, who has levied upon the property of an execution creditor, which is mixed with other property, the plaintiff must show notice and a demand of the property, and a delay or refusal to deliver. Daumiel *v.* Gorham, 6 Cal., p. 43.

Again; the statute contemplates that parties claiming property levied upon should give notice to the officer.    Practice Act, sec. 218.

But the defendant was entitled to notice and demand.    The plaintiff's complaint is in *trover*, and he seeks to recover without averring "demand and refusal." It will not be denied that a demand is a necessary allegation in a complaint in trover, and that such allegation must be proven on trial.    Therefore, the Court below erred in denying defendant's motion for a nonsuit.

3d. The Court below erred in overruling the defendant's objection to the witness McCloud being sworn in chief.

The paper of pretended release of implied warranty from the plaintiff to McCloud, having been executed without consideration, as stated by McCloud, was not sufficient to make him a good witness.

4th. The Court below erred in overruling defendant's offer to show McCloud's declarations, made the last of January, 1858, as to the *bona fides* of the alleged sale by him to the plaintiff.

The defendant had a right to ask this question, to lay the foundation to attack the credibility of witness.    Howe *v.* Scannell, 8 Cal., p. 325.

V. Insufficiency of the evidence to justify the verdict, and that the verdict is against law.

*Crockett & Crittenden, Whitcomb, Pringle & Felton* for Respondent.

The instructions filed by defendant clearly cannot be taken into consideration by this Court.

The defendant insists that the facts, that the jury were not called and asked if they had agreed upon their verdict, and that they gave the verdict to the Coroner to give to the Clerk instead of giving it directly to the Clerk, are fatal to the verdict.

To this point we answer :

1st. That such error, if error it be, should have been excepted to at the trial.    5 Cal., pp. 409 and 410, Morgan *v.* Hugg.

2nd. The irregularity complained of did not in any respect affect the substantial right of the defendant.    Section 193 of the Practice Act is explicit to the effect that a new trial can only be granted for causes materially affecting the substantial rights of such parties.    See

Paige *v.* O'Neal.

5 Cal. 409, Morgan *v.* Hugg, and cases there cited by counsel for respondent.

As to the Coroner's receiving the verdict from the jury before they separated, in addition to the above reasons, we would further say, that this is clearly the proper practice. The Coroner was the officer of the Court, and the only officer in the Court when the jury returned with their verdict. He was the officer to whom the jury were especially entrusted.

The second point made by appellant which we shall discuss, is the one which appears first on his brief. It is this: "The Court below erred in overruling the defendant's challenges, for causes shown, to jurors Richard Fowler, W. F. McKee, R. W. Stevenson and L. T. Smith."

The statute providing for new trials expressly requires that the cause for granting a new trial shall be one materially affecting the substantial rights of the party moving.

The defendant has refrained from showing for what cause, good or bad, these two jurors were challenged. As every presumption is in favor of the order refusing a new trial, now appealed from, and as this statement is entirely the statement of defendant, it is evident that the whole burden is on the defendant to show that he has been injured by any irregularity or error in the lower Court.

The decision of this Court in 1 Cal. 384, The People *v.* McCauley, covers all this branch of the case. Indeed, that case is very much stronger than this, because there the jurors objected to actually did sit upon the trial jury, and the case was a criminal case involving life.

The case cited by defendant from 5 Cal. 350, of The People of California *v.* Reyes & Valencia, merely goes to the point as to what questions are proper to put to the jury to ascertain whether they are or are not biased or prejudiced.

In the case in 6 Cal. 206, The People *v.* Williams, cited by defendant, the juror was asked if he had formed or expressed an unqualified opinion as to the guilt or innocence of the accused, and answered that he had expressed an opinion *which was not qualified.* He was justly held incompetent.

31

The next point made by the defendant is, that the Court below erred in overruling the motion for nonsuit.

When the plaintiff rested his case, it will be seen that no question at all had arisen as to the rights of the creditors of Kelty & Reynolds. No judgment had been proved against them. It is true, that the defendant testified that he took the goods under an execution against them; but this Court has held that in such a case the judgment also must be produced to establish the indebtedness, and that had not been done.

The question raised by the defendant, as to whether an immediate and continued change of possession, under the Statute of California, had been shown from McCloud to plaintiff, had not arisen when the motion for a nonsuit was made.

1st. Because the wheat was not in the actual or constructive possession of either Kelty or Reynolds at the time when defendant seized it.

2nd. Because an actual and continued change of possession is only necessary as against creditors and subsequent purchasers of the vendor; and this wheat was not taken by any creditor or purchaser from McCloud, the vendor to plaintiff.

3d. Because when plaintiff rested, defendant had not yet proved any judgment or debt against either Kelty or Reynolds.

The authorities therefore cited by defendant from California Reports have no application to this motion for nonsuit. They are all cases on the point as to what is an actual and continued possession as against creditors and subsequent purchasers. See cases Stewart v. Scannell, 8 Cal. 80; Vance v. Boyerton, 8 Cal. 554; Whitney v. Stark, 8 Cal. 514.

When, then, this motion for a nonsuit was made, the only question presented to the Court, was simply whether, as between the plaintiff and McCloud, a sale and delivery had been proved.

The next reason urged by the defendant, in support of the motion for a nonsuit is, that there was no demand alleged or proved by plaintiff on defendant for the wheat. In support of this singular proposition, he cites the case of Daumiel v. Gorham, 6 Cal. 43. Admitting that case to be law, it has not the least bearing on the present case. This

case is just the converse of the case cited.   There it is held, that the Sheriff is entitled to a demand where he has been misled, by the fact that goods were left in the possession of the judgment debtor.   See 1 Cal. 160, Ledley v. Hays, Sheriff.

The next point made by defendant is, that the Court below erred in overruling the defendant's objection to the witness McCloud being sworn in chief.   No authority is cited, or reason given by defendant, to show that this ruling was erroneous.

1st. The plaintiff having released McCloud from any implied warranty, the plaintiff could not afterwards either recover the money already paid by him to McCloud, or resist the judgment of the money still due to McCloud on the ground of failure of title to the wheat.

2nd. As McCloud was not a party to this suit he would not be bound by it.   It appears by the testimony of McCloud, that he did not give anything for the release, nor had he paid the consideration mentioned therein.   It is evident that this did not make him interested in the result of this suit.   His obligation to pay the consideration money mentioned in the release, even if it existed at all, was an absolute independent obligation created by his acceptance of the release, and dependent on no contingency.

The next point made by defendant is this :  The Court below erred in overruling defendant's offer to show McCloud's declarations made the last of January, A. D. 1858, on the *bona fides* of the alleged sale made by him to the plaintiff.

It hardly requires argument to show, that the declarations of a party as to the title of a piece of property, whether real or personal, are inadmissible after he ceases to have an interest in that title.   There are no authorities cited on this point by defendant, and we imagine it would be difficult to find any.   After the sale to plaintiff, McCloud was as completely a stranger to the title of this wheat as if he had never had any connection at all with it.

This Court has already decided that, " where it is apparent that in case a new trial should be granted, the verdict of the jury must be in favor of the plaintiff, a judgment in his favor will not be disturbed." Tohler v. Folsom, 1 Cal. 207 ;  Speck v. Hoyt, 3 Cal. 413.

That a sale made to a *bona fide* purchaser for a valuable consider-

ation is valid where the vendor acquired his title through fraud, has been decided by this Court, and very frequently by the Courts of the other States.    Merryfield v. Batchelder, decided at the October Term, A. D. 1854, cited in Crocker's Digest, title Fraud, (4).    See, also, 2 Pick. 183, Somes v. Loud, and cases there cited.    See also, the opinion of Marshall, C. J., in the case of Fletcher v. Peck, 6 Cranch. 133.

FIELD, J., delivered the opinion of the Court—TERRY, C. J., concurring.

The instructions filed by the defendant cannot be the subject of consideration.    They are not embodied in any statement or bill of exceptions, and are neither certified to by the Judge, or signed by him, and thus want the authentication essential to constitute any portion of the record.    The case must, therefore, be determined upon the sufficiency of the errors alleged, in disallowing the challenges for cause to three of the jurors called ; in the delivery by the jury of their sealed verdict to the Coroner, and their subsequent separation ; in the entry of the verdict without calling the names of the jurors, and asking them whether they had agreed upon the same ; in the refusal of the nonsuit; in the admission of McCloud as a witness; in the exclusion of evidence of his subsequent declarations as to the *bona fides* of his sale to the plaintiff, and in overruling the motion for a new trial on the ground that the evidence was insufficient to justify a verdict for the plaintiff, and that the damages assessed were excessive.

The challenges made to the jurors Fowler, McKee and Smith, were properly overruled.    They were interposed in general terms for cause, without a specification of the particular grounds.    The statute enumerates several different grounds for which such challenges may be taken, and a designation of the one upon which any particular challenge rests is essential to its consideration by the Court (Practice Act, sec. 162).    It is not sufficient to say, " I challenge the juror for cause," and then stop—as in the present case.    The ground upon which it can be sustained, if at all, must be also stated.    See Graham on New Trials, Waterman's ed., 2 vol., note to page 473 ; Maun v. Glover, 2 Green's N. J. Rep. 195.    But, aside from this consideration, none of these jurors thus challenged sat upon the trial.    They were afterwards all

challenged peremptorily.   Two other jurors, it is true, were challenged for cause, and the challenges disallowed; but it does not appear for what cause, or at what time, nor that the parties desired to challenge peremptorily after such disallowance.   The two jurors may have been called and examined before the three jurors, and the defendant may have declined to challenge them peremptorily.

The case was given to the jury in the evening, and upon retiring for deliberation, they were instructed to bring in a sealed verdict the following morning.   After agreeing upon their verdict they sealed it up, and the Clerk of the Court being absent, delivered it to the Coroner, under whose charge they were at the time, and requested him to give it to the Clerk.   On the same evening the Coroner gave it, sealed up as when received, to the Clerk, who opened it the following morning in Court.   All the jurors were at the time in their seats, and the verdict was opened in their presence and read to them.   Their names were not, however, called, and they were not asked whether they had agreed upon the verdict, and this omission and the delivery of the sealed verdict to the Coroner, constitutes the objection urged by the appellant.   The answer to the objection, that the names of the jurors were not called, is ready and conclusive.   No exception was taken at the time, and it is too late for the defendant to take advantage of the omission after acquiesence by his silence in the mode of proceeding. It is not pretended that the verdict entered, differs from the one sealed up, or that the result was in any respect affected by the omission. Errors which are immaterial and do not affect the substantial rights of the parties are unavailing on appeal, even when the subject of exception, much less so when they are permitted without objection.   Practice Act, sec. 188.

The objection as to the delivery of the verdict to the Coroner, instead of the Clerk, is untenable.   The Coroner was the officer under whose charge the jury were deliberating, the Sheriff being incapacitated by his position as a party to the suit.   The possession by him left the verdict as much in the possession of the Court itself as if it had been directly delivered to the Clerk.   We can perceive no valid objection to its delivery, upon the separation of the jury, to the sworn officer under whose charge they were deliberating.   The authorities cited by

appellant only establish the general proposition that the jury possess the right to alter their verdict, and the parties a right to poll them, at any time previous to its record. If this were true, in all instances, it would not help the case of the appellant, for it is not claimed that any desire to change the verdict was ever exhibited by the jury, or any right to poll the jury was ever insisted upon by either party. But we are not prepared to concede that the proposition is true in all instances. We are inclined to doubt whether a jury, after agreeing upon a sealed verdict and separating, can change it, except in mere matters of form. The opportunities of tampering with juries after separation are so numerous, and in important cases the temptation so great, and the ability of detection so slight, as to make it a matter of grave doubt whether sound policy does not require an adherence to the verdict as sealed, even as against a subsequent dissent of one or more of the jurors. But upon this point we refrain from expressing any decided opinion, as unnecessary to the determination of the point presented.

The next question arises upon the refusal of the motion for nonsuit. The action was brought to recover twenty-three hundred and twenty sacks of wheat, of the value of nine thousand three hundred and ninety-six dollars, alleged to be the property of the plaintiff, and to have been taken by the defendant and converted to his use. The defendant in his answer denied the taking and conversion of the property, and set up as a special defense the recovery of a judgment by one Fisher against Kelty & Reynolds for the sum of $11,356, the issuance of execution thereon, the levy of the same upon the wheat, and that such wheat was the property of the defendants in the execution, and was at the time in the possession of one McCloud, under a bill of sale to him by Kelty & Reynolds, executed with intent to defraud their creditors. When the motion for nonsuit was made, the plaintiff had proved a purchase of McCloud of three thousand sacks of wheat, more or less, in a certain warehouse; his taking a warehouse receipt for the same, and agreeing to pay the storage from the date of his purchase; that the wheat was sold to him all in one body, not mixed with anything else; that he paid for the wheat, at different times, over nine thousand dollars; that he had removed about seven hundred sacks, and that the balance was taken by the defendant, as

Sheriff, under an execution against Kelty & Reynolds. The motion was based upon the ground that the plaintiff had not proved a sale to him of the wheat, or its delivery, or averred a demand for it in the complaint, or proved a demand for it previous to the commencement of the action.

The evidence offered made out a *prima facie* case for the plaintiff. The defendant had not, as yet, laid the foundation for the special defense set up by the introduction of the judgment against Kelty & Reynolds. The property was in the possession of McCloud, a stranger to the execution. Its seizure by the defendant, and subsequent sale had been shown. As a justification for that seizure, the execution was insufficient. The judgment upon which it was issued was also essential, and until its production, the defendant was not in a position to attack any claim of the plaintiff. The sale from McCloud to the plaintiff was sufficient without any delivery. The statute only requires an actual and continued change of possession as a protection against creditors and subsequent purchasers of the vendor. At the time the motion was made, the connection of any other person than McCloud with the wheat, as vendor, had not been disclosed, and the defendant was not acting for any creditor of his, or any purchaser from him.

It was not essential to aver a demand of the defendant of the wheat in controversy in the complaint, or to prove a demand on the trial. If the property in fact belonged to the plaintiff, and it is upon this theory the suit is brought, and to this effect the evidence tended when the plaintiff rested, the seizure by the defendant was tortious; and it is a general rule, that when the possession of property is originally acquired by a tort, no demand previous to the institution of suit for its recovery is necessary. It is only when the original possession is lawful, and the action relies upon the unlawful detention, that a demand is required. (Acker v. Campbell, 23 Wend. 371; Sedley v. Hays, 1 Cal. 160.) The case of Daumiel v. Gorham, 6 Cal. 43, only decides, that where the goods of a third person are mixed with the property, or are in the apparent possession of the judgment debtor, a Sheriff who levies upon them, supposing them to belong to the defendant in execution, is not liable as a trespasser *ab initio*, and it is necessary to show a notice and

a demand of the goods, and a refusal to deliver.   In the case at bar, the officer was not misled by any apparent possession of the defendants in execution, or by any mixture of their property with that claimed by the plaintiff.

The objection to the competency of McCloud was untenable.   The release executed, discharged him of all interest in the event of the action.   He could not be subsequently held liable upon any implied warranty, or be debarred by any defect in the title of the property from a recovery of the balance due on the sale.   The nonpayment of the consideration did not affect the operative effect of the instrument as a valid release.   The obligation to pay the consideration was created by the acceptance of the release, and was not dependent upon the contingency of a recovery in the action.

The offer to show the subsequent declarations of McCloud as to the *bona fides* of his sale to the plaintiff was properly overruled.   Such declarations were clearly inadmissible.   McCloud was then as much a stranger to the title as though he had never had any connection with the wheat, and his statements were entitled to no greater weight than mere hearsay.   Declarations of the vendor, prior to sale, stand upon very different grounds.   Bridge *v.* Eggleston, 14 Mass. 250.

The motion for a new trial, on the ground that the evidence was insufficient to justify a verdict for the plaintiff, was properly overruled. The other points made in the motion have already been considered. The testimony on the part of the defendant, embodied in the transcript, abundantly establishes the right of the plaintiff to a recovery ; indeed, it warrants no other result.   According to that testimony, Kelty & Reynolds were the original owners of the wheat, and in June, 1857, executed a bill of sale, and delivered possession of it to McCloud, who stored it in a warehouse, rented by him.   Though this sale was void, as against the creditors of Kelty & Reynolds, in being made to the knowledge of McCloud, to prevent Fisher from reaching the property on execution, or by attachment, it was good as between Kelty & Reynolds and McCloud ; and a sale by the latter to the plaintiff, for a valuable consideration, without notice of the original fraud, passed a perfect title.   The plaintiff could not be afflicted in his purchase, though

the title of his vendor was acquired by fraud.   The sale to McCloud was not an absolute nullity.   The title to the property passed to him, and would have remained with him as against any assertion of right by his vendors.   It was subject to be defeated upon the action of their creditors; but, until such action, his power of disposition was absolute. The title originally affected with a taint became cured by the subsequent conveyance.   It could be defeated only whilst it remained in him, unless the plaintiff had previous notice of the fraud rendering void the title.   (Statute of Frauds, sec. 24.)   To this effect is the decision of this Court in Merryfield *v.* Bachelder *et al.*, rendered at the January Term, 1854, (not reported).   In that case, the plaintiff brought suit to recover certain mining interests purchased by him of one Witts. The defendants set up a purchase under a judgment recovered against one Ortman, and that the conveyance by Ortman to Witts was made to defraud his creditors; but the Court said: " Whatever fraud may have entered into the original sale from Ortman to Witts, it is not shown that Merryfield was privy to it; he must, therefore, be treated as an innocent purchaser," and affirmed the judgment for the plaintiff.

Conveyances of real and personal property, made to hinder, delay or defraud creditors, are subject to the same defect, liable to be avoided at the suit of the creditors, but valid as between the parties, and vest a title which can be transferred perfect to a *bona fide* purchaser for a valuable consideration.   In Fletcher *v.* Peck, (6 Cranch. 133) the doctrine is thus clearly expressed by Mr. Chief Justice Marshall: " Titles which, according to every legal test, are perfect, are acquired with that confidence which is inspired by the opinion that the purchaser is safe.   If there be any concealed defect, arising from the conduct of those who held the property long before he acquired it, of which he had no notice, that concealed defect cannot be set up against him. He has paid his money for a title good at law; he is innocent, whatever may be the guilt of others; and equity will not subject him to the penalties attached to that guilt.   All titles would be insecure, and the intercourse between man and man would be very seriously obstructed, if this principle be overturned."

In Bean *v.* Smith *et al.*, (2 Mason, 274) Mr. Justice Story says: " A conveyance to defraud purchasers, or to defraud creditors, is not

' utterly void,' as has been sometimes supposed ; it conveys the estate effectually as between the parties and their representatives ; and the estate may be maintained against all persons but those whom it was intended to defraud.   The grantor himself cannot convey the same title to any mere volunteer, nor can he avoid his own grant in his own favor ; nor can a mere stranger contest the validity of the conveyance. The estate, therefore, passes *toties quoties* by every subsequent convey-ance, and it is good against all the world, except creditors and pur-chasers, in the possession of every successive grantee, even with notice of the fraud ;" and after commenting upon a distinction drawn by Chancellor Kent, in the protection afforded to *bona fide* purchasers, without notice, when the conveyance from the original grantor was made in fraud of purchasers, and when it was made in fraud of creditors, observes :   " The policy of the law generally is, to support *bona fide* purchasers, for a valuable consideration, in the titles acquired ; and this policy is at least as ancient as Woodcock's case, in 33 Hen. 6, 14, where a conveyance from a fraudulent grantee to such a purchaser was permitted to defeat highly meritorious and legal claims.   The great object of the law is to afford certainty and repose to titles hon-estly acquired.   It is of no public utility to destroy titles so acquired, on account of the taint of a prior secret fraud, which was unsuspected and unknown, and which, probably, no diligence could detect.   If the creditor of the original grantor be cheated by holding such titles valid, the innocent purchaser would be no less cheated by holding them void. And, therefore, the common law, which leans to equity, is unwilling to visit upon innocent persons the consequences of fraud.   It enables them to hold estates acquired *bona fide*, for a valuable consideration, purged of the anterior fraud that infected the title."   See Trott *et al. v.* Warren, 11 Maine, 227 ; Jackson *v.* Henry, 10 John. 186 ; Mow-rey *v.* Walsh, 8 Cowen, 238 ; Root *v.* French, 13 Wend. 570 ; Somes *v.* Brewer, 2 Peck, 184 ; Rowley *v.* Bigelow, 12 Pick. 308 ; Dexter *v.* Harris, 2 Mason, 531.

There is no evidence contained in the record which shows or tends to show any knowledge on the part of the plaintiff of the fraudulent character of the sale from Kelty & Reynolds to McCloud.   All the parties to that transaction assured him that the sale was a valid and

Paige *v.* O'Neal.

honest one.   McCloud was in the possession of the property with the evidence of title from the original owners, and had been in such possession for months previous to the purchase, and the subsequent conduct of the plaintiff was that of a man unsuspicious of any taint resting upon the title of his vendor.   He appears to have relied implicitly upon the representations of the parties.   He paid, at different times, the greater portion of the contract price, and yet left the bulk of the property in the possession of McCloud.   He did not even take any steps for its removal, except in parcels, as he had found occasion to dispose of it.

The damages awarded to the plaintiff, beyond the value of the wheat, after remitting the two thousand dollars directed by the Court, do not appear excessive—certainly not to that extent to justify the reversal of the judgment.

The value of the wheat, as found by the jury, is beyond that established by the evidence.   Starbuck, who places his estimate upon its value at five cents a pound, does not appear to have examined or seen it.   Nye, who had examined it, placed its value at four and one-half cents per pound.   The jury took the highest estimated value, and the difference between the two estimates is ten hundred and sixty six dollars.   In this amount the judgment must be reduced.

The judgment, therefore, will be affirmed at the cost of the respondent, upon his filing a *remittitur* of one thousand and sixty-six dollars of its amount.

Ordered accordingly.