## THE PEOPLE *v.* ROBLES.

### APPEAL from the District Court of Ponce.

No. 99.—Decided April 25, 1906.

APPEAL—EVIDENCE—BILL OF EXCEPTIONS—STATEMENT OF FACTS.—In order that the Supreme Court may consider on appeal the evidence taken at the trial, it is necessary that the same be set forth in a bill of exceptions or statement of facts properly approved.

ID.—STENOGRAPHER'S NOTES—MINUTES OF THE COURT.—Even though the stenographer's notes constitute *prima facie* the minutes of the court, the minutes on appeal must contain only a brief statement or memorandum of the facts as they occurred during the trial, and they have never been considered to include the verbatim testimony of witnesses, and they cannot therefore be considered as a bill of exceptions or statement of facts.

ID.—INSTRUCTIONS OF THE COURT.—In order that the stenographer's notes of the instructions of the court to the jury may form part of the record so that the errors committed therein may be advanced on appeal in the same way as if they had been included in a bill of exceptions, it would be necessary that they should bear the endorsement setting forth the decision of the court in regard to the questions raised with respect to such instructions.

ID.—Where a defendant has not requested the court to instruct the jury upon certain points which he may deem essential, he cannot subsequently allege that the court erred in not instructing the jury upon such points.

ID.—The fact that a judge recommends to the jury that the form of their verdict be the same as those used in verdicts found in other cases submitted to the decision of the same jury, they cannot be considered as injurious to the rights of the accused, nor can it be said that such a recommendation tended to curtail the independence of the jury.

VERDICT OF THE JURY.—The fact that the jury in its verdict recommends clemency for the accused is not sufficient to warrant the assumption that the jury believed that the extreme penalty should not be imposed, because in such a case the jury must find the accused guilty, with extenuating circumstances; and it is only in such a case that the judge may reduce the punishment to life imprisonment.

CONSTRUCTION OF STATUTES.—It is a well-settled principle of jurisprudence that where a State adopts a statute in force in another State, the construction placed upon its provisions by the courts of the State from which the statute was adopted is worthy of great consideration by the courts of the State adopting such statute in construing the provisions of the same, it being presumed that the legislature was cognizant of such construction when it adopted the statute.

The facts are stated in the opinion.

*Mr. Hord* for appellant.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

The transcript forwarded to this court contains a statement of the time and form in which the information was presented; the plea of the defendant; the verdict; the judgment; the testimony of the witnesses submitted to the consideration of the jury taken from the reporter's notes, said reporter being M. M. Sama, who certifies that they are a true and faithful copy of the testimony given by the witnesses at the trial; the charge of the jury, in which not even the signature of the judge appears; and the notice of the appeal to this Supreme Court, signed by Ramón Dapena, as counsel for the defendant, the entire transcript certified to by the deputy clerk of the District Court of Ponce, J. R. Massanet, who affirms that this is a true copy of the documents relating to this cause.

On August 28th, 1905, the following information was read in open court to the defendant:

"In the name and by the authority of The People of Porto Rico.— United States of America, *ss:* The President of the United States. *The People of Porto Rico* v. *Felipe Robles.* In the District Court of Ponce, June 27, 1905. Felipe Robles is accused by information filed by the *fiscal* of the grave crime of murder in the first degree, defined and punished in sections 199, 200, 201 and 202 of the Penal Code, committed as follows: About 1 a. m. the night of May 7, 1905, on the slope of the hill called St. Thomas, situated in this municipality and the judicial district of Ponce, in a treacherous and deliberate manner, he unlawfully killed Martín Vélez, inflicting two wounds upon him with a dagger, one of them in the abdomen, which severed important viscera, resulting in his death in a few moments. This act is contrary to the law in such case made and provided and against the peace and dignity of The People of Porto Rico.—R. U. Colón, district *fiscal.*

"The above information is based on the sworn testimony of witnesses examined before the *fiscal,* and I solemnly believe that there

is just cause for the filing of this information.—R. U. Colón, district *fiscal*.

·"Sworn to and signed before me this 28th day of July, 1905.—Genaro Vidal, clerk of the district court."

The defendant pleaded not guilty.

The jury was duly impaneled, and after it had heard the information read, the plea of the defendant of not guilty, the evidence, the arguments, the summing up of the case and the charge of the judge upon the points of law, it returned the following written verdict:

"The jury, after deliberation, returns its verdict, finding Felipe Robles guilty of the crime of murder in the first degree, praying the judge to show clemency in the imposition of the sentence. Ponce, October 20.—Luis Dastas, foreman of the jury."

The court accepted the verdict and declared the defendant convicted, and on October 23, 1905, the latter again appeared in open court and not having shown sufficient cause why the judgment should not be pronounced against him, he was sentenced to the death penalty, to be executed by hanging the defendant by the neck until dead; and it is ordered that the marshal of the court be ordered to deliver the defendant, within ten days after this sentence, to the warden of the penitentiary of San Juan, P. R., for the execution of the judgment, on the 20th of the next month of January, 1906, in the meantime remaining in confinement in the said penitentiary. And it is further ordered that a certified copy of this judgment issued by the clerk be delivered together with the defendant to the warden of the penitentiary.

An appeal was taken from this judgment of the District Court of·Ponce.

No bill of exceptions or statement of facts has been presented, nor did counsel for the defendant even appear in this Supreme Court to allege in this appeal what he might deem advisable in furtherance of the interest of his client.

Nevertheless, this court being desirous of complying with

the high ends of justice in so far as possible, appointed Henry
F. Hord, an attorney of well-known reputation at this bar,
to defend the appellant, said learned counsel accepting this
onerous charge and formulating his brief in which he pre-
sented a number of points of law and of fact relating to the
case which appeared to him to be worthy of the attention of
this court. He argued orally in support of his brief at the
hearing.

The *fiscal* of this Supreme Court considered all the points
raised by the defense and contested them, praying for the
dismissal of the appeal, with the costs against the appellant.

These points are in substance the following:

"First. That it was not proved in the District Court of Ponce
that it was competent to take cognizance of this case, because it was
not sought to establish in the action that the *barrio* of St. Thomas, the
place where the crime was committed, formed a part of the judicial
district of Ponce.

"Second. That the charge of the judge to the jury omitted the
important fact of instructing it with regard to his jurisdiction to try
this case.

"Third. From the testimony of the witnesses and the defendant,
the idea arises of a dispute between the deceased and the defendant,
the judge, however, in charging the jury on this important point, not
only omits any reference thereto, but instructs the jury that in all
cases of killing, the law presumes implied malice, and, consequently a
person who deprives another of life is guilty of murder.

"Fourth. That the judge began in his charge to the jury with these
words: "Gentlemen of the jury: An exceedingly grave case, as grave
as the two you have previously heard, is submitted to you for consid-
eration to-day;' closing with these words: 'The form of the verdict
you are acquainted with; the same as in the previous cases,' deducing
from such statements the conclusion that the right of the defendant
to an impartial trial has been impaired, because it had nothing to do
with the proceedings which the jury had previously taken cog-
nizance of.

"Fifth. That the judge in charging the jury upon the testimony
of witness Amadeo Barreto, did it in a manner erroneous and preju-
dicial to the interests of the defendant.

"Sixth. That the defendant is entitled to have his guilt proven

by legal means, and a reading of the testimony of the witnesses shows that the *fiscal* forced those who testified to change the meaning of their testimony and to contradict themselves; that the questions were put to the witnesses in a manner tending to suggest the answer desired; that the judge omitted to charge the jury in regard to self-defense; and that he erred in informing it that the defendant had confessed that he was guilty of the crime, and that he had committed it because the deceased struck him with a stick, and finally, that although the jury prayed for clemency for the defendant, the judge sentenced him to capital punishment.''

These six objections may be further summarized by saying that some refer, in the opinion of the defense, to omissions and improprieties in the evidence, others to deficiencies in the charge to the jury in some points, and others that by improper words impaired the right of the defendant to an impartial trial.

It is impossible for us, with the elements brought to this appeal, to judge of facts which developed during the trial and which were considered by the 12 citizens who in this case composed the jury which tried Felipe Robles.

For us to reach a conclusion thereon, it would have been necessary for a bill of exceptions or a statement of facts to have been submitted to us, thus complying with the provisions of the law.

With regard to exceptions, Chapter VI of the Code of Criminal Procedure prescribes when they may be taken by the defendant and in what cases, and it develops the manner and form indispensable on each occasion in order that they may be effective in appeals of this character, section 299 of said Code providing that the bill of exceptions shall contain so much of the evidence only as is necessary to present the questions of law upon which the exceptions were taken, and empowering the judge upon the settlement of the bill, whether agreed to by the parties or not, to strike out all other matters contained therein.

With regard to the statement of facts, rule 17 of the Rule

for District Courts, approved by the Attorney General, is specific. Said rule provides:

"Rule 17.—After the trial of a cause, the defense, or the prosecuting attorney, may make out a written statement of the facts given in evidence on the trial, and submit the same to the opposite party, or his attorney, for inspection; such statement of facts must contain a full and complete statement of all the facts given in evidence on the trial of the cause, setting forth the testimony of each witness in concise narrative form, and shall include copies of all papers, documents, and exhibits adduced in evidence, and the certificate of the parties, or their attorneys, attached thereto, must so state. If the defendant, or his attorney, and the prosecuting attorney, agree upon the statement of facts, they shall submit it to the judge, and he shall, if he finds it correct, approve and sign it, and the same shall be filed with the secretary, and a copy thereof shall be incorporated in the transcript on appeal. Should the parties fail to agree, the statement of facts shall then be made up by the judge, who shall certify to the same; and shall also certify that the parties failed to agree. Such statement of facts must be made up and filed within such time as the court may designate, not to exceed the time allowed for the settlement of bills of exceptions."

Absolutely nothing of this kind has been done, and now the learned counsel appointed by this court to defend the accused in this appeal, has made intelligent and able efforts, because, surely knowing that the testimony of the witnesses taken from the reporter's notes and certified to by him, have not by themselves the authenticity necessary, and, therefore do not form part of the record; he nevertheless takes them as a basis for alleging errors and improper conduct on the part of the *fiscal* of the District Court of Ponce in questioning the witnesses for the prosecution.

This court has already on a number of occasions fixed the only scope of the reporter's notes transcribed on the typewriter, and we will call attention and refer to the following cases:

"*The People of Porto Rico* v. *Juan de Mata Eligier and Juan del Carmen Griló* (9 P. R. Rep., p. 357), decided November 20, 1905, from

the court of Arecibo; *The People of Porto Rico* v. *Eusebio Torres Candelaria* (9 P. R. Rep., p. 396), decided November 28, 1905, from the *court of Arecibo; The People of Porto Rico* v. *Francisco Dones Ramos* (9 P. R. Rep., p. 423), decided December 5, 1905, from the court of Humacao.''

In these and in other cases section 5 of the Act approved March 10, 1904, ''To provide for the appointment, duties and compensation of stenographer of the district court,'' was taken into consideration.

Attention was at that time called to the error in the Spanish translation of this act, because the English edition provides that these copies shall constitute *prima facie* evidence of the minutes of the court, and the word ''minutes'' signifies, according to the authorities cited in those cases, to which we refer, the brief summary or memorandum of what occurred in the court during the sessions of the trial; but it was also stated that the testimony of the witnesses has never been included in the minutes, which is all that we have here to judge of the errors alleged by the defense.

Under the circumstances, we are unable to ascertain whether it was proved or not that the *barrio* of St. Thomas, where the crime was committed, formed part of the judicial district of Ponce; and we cannot ascertain, either, whether the *fiscal* acted improperly in putting leading questions to the witnesses, forcing them further to contradict themselves and to vary the meaning of their testimony.

Upon these points, constituting the first and sixth points of the brief which we have enumerated above, we cannot render a proper decision, because we have no statement of facts in proper form, and the other matters, with which it is sought to supply this statement of facts, lack the intervention of the *fiscal* and especially the approval of the judge which is what gives it the necessary validity and authenticity in order to decide upon the findings upon the evidence without danger of lamentable errors.

And let us now consider the second, third, fourth and fifth

points contained in the brief of the defense, which refer to the charge to the jury.

We have already stated that this charge is copied in the transcript without containing the signature of the judge.

There is no doubt that the charges may form part of the record, but those given, as well as those denied, must contain their respective endorsements. This is so provided by section 326 of the Code of Criminal Procedure, and this is also deduced from the spirit of sections 266 and 300 of said Code.

Furthermore, according to section 266, the instructions must be oral; therefore, if a copy thereof appears in the transcript, it is doubtless because the reporter took them the moment they were given, and then according to section 300, they should have been submitted with the endorsements showing the action of the court; and only in this form could they form part of the record; and any error in the decision of the court, thereon could have been taken advantage of on appeal, in like manner as if presented in a bill of exceptions.

Section 300 of our Code of Criminal Procedure, in so far as the manner in which the instructions of the judgment court to the jury are to be submitted to this court on appeal is concerned, is substantially the same as section 1176 of the Penal Code of California.

In order that this substantial agreement may be observed, we transcribe it herewith:

"Section 1176.—When written instructions have been presented, and given, modified, or refused, or when the charge of the court has been taken down by the reporter, the questions presented in such instructions or charge need not be excepted to or embodied in a bill of exceptions; but the judge must make and sign an indorsement upon such instructions, showing the action of the court thereon, and certify to the correctness of the reporter's transcript of the charge; and thereupon the same, with the indorsements, become a part of the record, and any error in the action of the court thereon may be reviewed on the appeal in like manner as if presented in a bill of exceptions."

If any doubts still remain on this point, they would all

disappear upon consideration of the opinions of the Supreme Court of California, which is the State from which the Code of Criminal Procedure here in force emanated.

In the cause against Francisco Rivera, *alias* Panchito (7 P. R. Rep., p. 325), decided by this court on June 25, 1904, in which Mr. Justice MacLeary delivered the opinion of the court, we said:

"It is a well-settled principle, that when a statute is adopted by one State from another, the construction put upon it by the courts of· the latter is entitled to great weight in the interpretation to be given it by the courts of the former; it being presumed that the legislature had such construction in view in the passage of the act, when adopting the language of the statute."

Let us now see how the subject under consideration has been interpreted in California:

"Instructions not authenticated by the judge, nor embodied in a bill of exceptions, cannot be considered by this court as part of the record on appeal." (*People* v. *Keeley*, 81 Cal., 210; *People* v. *Rogers*, 81 Cal., 209; *People* v. *Beaver*, Cal., 419.)

"Errors assigned upon instructions will not be noticed unless the instructions are brought before the court in an authentic form." (*People* v. *Tetherton*, 40 Cal., 286.)

"Instructions to the jury, which are not embodied in the statement on appeal or bill of exceptions, and are neither certified to by the judge trying the case, nor signed by him, cannot be the subject of consideration by this court." (*Paige* v. *O'Neal*, 12 Cal., 483.)

"In every criminal case, the instructions given and refused should be so marked and signed by the judge, or they will not be considered on questions of error." (*People* v. *Lockwood*, 6 Cal., 205.)

And especially:

"The instructions of the court given or refused in a criminal case are no part of the record, unless accompanied by the indorsement of the judge, or embodied in a bill of exceptions. Neither the clerk nor the stenographic reporter can give verity to instructions which are without the indorsement or authentication of the judge." (*People* v. *January*, 77 Cal., 179.)

Hence it is clear that we cannot consider the charge of the court to the jury which has been submitted to us, devoid of any guarantee.

This being the case, neither can we say that the jury was not instructed upon self-defense, because we have already said that we are unacquainted with the evidence taken at the trial, and it is known that in criminal causes no charges may be made to the jury which are not based upon evidence adduced at the trial. (*People* v. *Roberts,* 6 Cal., 214; *People* v. *Sánchez,* 24 Cal., 17.)

But let us assume in honor to the learned counsel for the defense, that the charge was presented here in due form, and let us also assume that the jury was not charged on homicide committed in self-defense; then we have section 266 of our Code of Criminal Procedure, which grants the defendant the right to ask that certain charges be given to the jury, and if this was not done in due time, we find the sound doctrine in the notes to section 1127 of the Penal Code of California, which is very similar to section 266 of our Code, which reads:

"A defendant cannot complain of the failure of the court to instruct the jury upon a particular point if he fails to ask for an instruction upon that point." (*People* v. *Haun,* 44 Cal., 96; *People* v. *Ah Wee,* 48 Cal., 236.)

"Failure of the court in a criminal prosecution to instruct the jury upon any proposition deemed essential by the defendant is not error, where no request is made for such instruction." (*People* v. *Fice,* 97 Cal., 459.)

Let us continue assuming that the charge has been duly presented and at the same time that the judge did begin and close his charge with the words he is said to have done, they could not have prejudiced the rights of the defendant by having a direct or indirect influence upon the mind of each and every member of the jury.

As a matter of fact, the prosecution was for a grave crime, involving as it did the trial of an act which resulted in depriving a man of his life, and if the judge, addressing the

jury, called attention to this gravity, he did nothing more than to publish a truth of which the members of the jury were surely already convinced. It is one thing to recognize the gravity of a case considered by itself in view of its own nature and completely apart from the author of the criminal defendant, which said charges do not show.

Neither did the charge that the form of the verdict be the same as in previous cases, operate to the prejudice of the defendant. This could not have had any effect upon the independence of the jury to deliberate, and much less to incline it in any way to return a verdict of guilty in the form in which it found it after hearing the evidence. We believe, rather, that it was the intention of the judge merely to have the verdict formulated in clear and definite terms, in order to avoid a new consideration thereof, which would otherwise have been necessary according to the last paragraph of section 288 of the Code of Criminal Procedure.

The verdict is perfectly correct, and it is true that Felipe Robles, as alleged by the defense, was sentenced to death, notwithstanding the recommendation of the jury for clemency in the imposition of the sentence. But such clemency could not be exercised in this case, because according to section 202 of the Penal Code, the crime of murder in the first degree is punishable by death, a penalty which is indivisible; and if the jury had believed that the last punishment should not have been imposed, it should have said "guilty of murder in the first degree with extenuating circumstances." Only thus could the judge have reduced the punishment to life imprisonment.

The form in which the verdict was found leads us to believe that clemency, requested under such conditions, is born of sentiment; and although this feeling of the heart may be construed by some as doubt in the mind of the jury, we cannot, within the facts, give such sentiment any value to modify or reverse the judgment appealed from.

Clemency is not at odds with justice, but it is not for us to

exercise the former; we can do nothing but apply the law according to our honest conviction. ·

It is really to be regretted that the testimony of the witnesses has been presented here in so improper a manner. It is always really lamentable, especially in cases involving the death penalty, that a statement of facts, prepared as prescribed by law, is not presented. The defense before this Supreme Court has been meritorious and worthy of all praise.

But in the circumstances under which we must decide this case, we cannot technically do anything else than affirm the judgment appealed from with the costs against the appellant, in view of the fact that the real record, which is what we should consider here, does not show the commission of any fundamental error; and it is to be assumed that the trial was impartial and the verdict and the sentence just.

*Affirmed.*

Chief Justice Quiñones, and Justices Hernández, MacLeary and Wolf concurred.