Bonaparte *vs.* Clagett.

(Decided 22nd June, 1893.)

<hr />

CHARLES J. BONAPARTE *vs.* HENRY W. CLAGETT.

*Trover and Conversion—Sale — False representations of Agent—Liability of Principal—Assumpsit for Goods sold and Delivered—Ratification of Sale—Misconception of Remedy—Accession and Conversion—Demand—Right to Recover in Trover.*

The defendant, owning a farm on which there was a canning factory, his tenant, and a certain firm agreed that for the year 1887, said firm should furnish money to enable the tenant, who was notoriously insolvent, to carry on the business of canning green corn, and tomatoes; that the money was to be placed in the hands of the defendant who was to pay it out to the tenant as

needed; that the legal title to the goods should be in the defendant who should hold them for the purpose of reimbursing the firm for its advances; that the goods were to be shipped to said firm, to be sold by it on commission. A similar arrangement, modified somewhat, was entered into for the year 1888. During the year 1887, at the solicitation of the tenant, the plaintiff raised corn and tomatoes and delivered the same at the factory, upon the assurance that the defendant would pay all bills which the tenant approved. Checks were given at different times by the tenant on the defendant in payment of the whole amount due the plaintiff, and they were all honored. In 1888, the tenant requested the plaintiff to grow corn and tomatoes for the factory in the same way he had done, and upon the same terms as in 1887, which plaintiff agreed to do, and accordingly did grow corn and tomatoes, and deliver the same at the factory, and which were intermingled with other goods of like character of the defendant. A part of the amount due the plaintiff for the corn and tomatoes so furnished was paid in drafts on the defendant, drawn by the tenant at various times for different sums, and in favor of the plaintiff. For the year 1888, the defendant, at the suggestion of the tenant, signed a number of written contracts with different farmers, other than the plaintiff, agreeing to be responsible for the payment of the goods which they should furnish to the tenant. The tenant showed the plaintiff one of the contracts in blank, signed by the defendant, and offered to fill it up and give it to the plaintiff, but it was mutilated and he declined it; the tenant assuring him that they were only intended for the new planters, and that he would be paid in 1888, as he had been in 1887. The defendant declined to pay the balance of the plaintiff's claim for goods delivered in 1888, or to authorize the tenant to give him enough of the canned goods at the factory to cover such claim. HELD:

That the defendant having obtained possession of the plaintiff's goods through the tenant's misrepresentations, which by the exercise of reasonable caution the defendant could have prevented from being made effective, he is liable in *trover* for their conversion, though he neither contemplated, nor participated in, any fraud intentionally or knowingly, in connection with the transactions.

Bringing an action in *assumpsit* for goods sold and delivered does not constitute a ratification of the contract of sale w hich will prevent *trover* for the value of the goods, where before judgment the plaintiff discovers that he has misconceived his remedy, and, upon amendment allowed, changes the form of action to *trover*.

Bonaparte *vs.* Clagett.

The owner of goods which have become intermingled with those of another will be protected in such way as the circumstances permit, where the goods are distinguishable, or the intermingling occurred without his fault.

Demand is not necessary to an action of *trover* where the defendant, with full knowledge of the manner in which the goods have been acquired, has converted them to his own use, and refuses to deliver them in their changed state, or pay their value in the original state.

The fact that the plaintiff was employed at the factory during a part of the time his corn and tomatoes were being delivered, does not affect his right to recover, where it appears that it was not until after his employment had ceased, he ascertained the true character of the tenant's representations.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiff offered the two following prayers :

1. If the jury find that the plaintiff was induced to sell the corn and tomatoes, mentioned in the evidence, to Thomas Clagett, of Weston, and to deliver the same at the factory at Weston by means of false and fraudulent representations made by said Thomas Clagett, of Weston, to the plaintiff, then no title to said goods passed from said plaintiff to said Thomas Clagett by reason of said sale or delivery ; and if the jury find that, at the time of delivery of said goods at said factory, there existed between the defendant, Charles J. Bonaparte, Messrs. Thomas Roberts & Co., of Philadelphia, and said Thomas Clagett, an agreement, by virtue of which all the cans used at said factory were to be the property of said Charles J. Bonaparte, and all the goods, to wit, corn and tomatoes, delivered there, should be packed in said cans, and become the property of said Bonaparte, and

that said Bonaparte sent cans down to said factory from Baltimore, or other places for that purpose, and if they shall find that, after the delivery of said corn and tomatoes by the plaintiff at said factory under the circumstances above recited, said corn and tomatoes were taken by said Thomas Clagett in pursuance of the arrangement existing as aforesaid between him, Bonaparte and Roberts & Co., mixed and mingled with other goods of similar character on the premises belonging to said Bonaparte, so that their identity was entirely lost and changed by the process of manufacture into what are called canned goods of much greater value than said goods when in a natural state, and then packed in cans belonging to said Bonaparte as aforesaid, and if they find that said goods as thus packed in cans were all shipped away and sold either by said Bonaparte or said Thomas Roberts & Co. in pursuance of the understanding and agreement above referred to, then the plaintiff is entitled to recover in this case whatever the jury may find to have been the value of said corn and tomatoes at the time of their delivery at said factory, and being mixed with goods of said Bonaparte with interest up to date.

2. If the jury shall find from the evidence that the plaintiff Henry W. Clagett was induced to sell and deliver to the factory at Weston the corn and tomatoes mentioned in the evidence by means of false and fraudulent representations made to him for that purpose by Thomas Clagett, of Weston, and if they find that said corn and tomatoes had been thus delivered at said factory, they were manufactured by said Thomas Clagett of Weston into canned goods and placed in cans belonging to the defendant, Charles J. Bonaparte, Thomas Roberts & Co., of Philadelphia, and said Thomas Clagett, of Weston, mentioned in the evidence of defendant, and if the jury shall further find that after said goods had been packed into cans, but before they had been removed or

Bonaparte *vs.* Clagett.

sold the plaintiff notified the defendant of the claim which he now makes in this case; that the defendant declined to pay for said goods; that thereupon the plaintiff requested the defendant to return to him his goods, or their equivalent in canned goods, which equivalent could have been easily ascertained, but that defendant refused to do so and subsequently shipped the whole of said goods away to Baltimore and finally disposed of the same without ever paying the plaintiff anything therefor, then the plaintiff is entitled to recover in this case and their verdict should be for the plaintiff for the value of said corn and tomatoes as delivered at said factory and before they were canned, with interest up to date, provided the jury shall further find that the defendant so conducted himself in relation to the canning business at Weston, and his dealings with Thomas Clagett of Weston as to justify the plaintiff as a reasonably prudent man in believing that said Thomas Clagett of Weston had authority to make the said representations and to pledge the credit of the defendant in the manner testified to by the plaintiff, whereby the plaintiff was induced to sell and deliver said corn and tomatoes as above set forth.

The defendant offered eight prayers, of which only the following need be reported:

2. There is no evidence in this case legally sufficient to enable the jury to find that the defendant converted to his own use any canned corn or canned tomatoes belonging to the plaintiff, and therefore the plaintiff cannot recover under the third count of his declaration.

4. There is no evidence in this cause legally sufficient to enable the jury to find that the plaintiff ever had any property, general or special, in any canned corn or canned tomatoes which came into the posession of the defendant before the bringing of this suit, and therefore the plaintiff cannot recover under either the third or fourth counts of his declaration.

Bonaparte *vs.* Clagett.

5. There is no evidence in this cause legally sufficient to enable the jury to find that the defendant either wrongfully took possession of any corn or tomatoes, whether canned or uncanned, belonging to the plaintiff, or that after having rightfully acquired the possession of any such corn or tomatoes of the plaintiff he refused to deliver the same to the plaintiff after demand therefor, made at a time when the defendant had the power to comply with it, and therefore the plaintiff is not entitled to recover under any count of his declaration.

6. If the jury shall find that the plaintiff either made a contract with, or furnished goods, to Thomas Clagett, of Weston, upon the faith of fraudulent representations made by said Thomas, to the effect that the defendant was backing him in his business and would pay everything that he gave a draft for, and all bills that he marked "O. K.," and that such representations were untrue to the knowledge of the said Thomas, still, the plaintiff cannot recover in this cause, if the jury shall further find that any reasonably prudent man, situated as the plaintiff was, would have inquired of the defendant as to the truth of such representations of the said Thomas, and that the plaintiff could have made, but did not make, such inquiries.

7. If the jury shall find that Thomas Clagett, of Weston, obtained from the plaintiff the corn and tomatoes mentioned in the evidence, and canned the same with his knowledge and consent, and afterwards delivered the canned product to the defendant under the contract between said Thomas Clagett of W., the defendant and Thomas Roberts & Co. mentioned in the evidence, then, even though the jury shall find that said Thomas Clagett of W. obtained said corn and tomatoes from the plaintiff by false and fraudulent representations made by him to the plaintiff, the plaintiff cannot recover for any of said corn or tomatoes so delivered, if they shall further

find that after its delivery and prior to the first communication of the plaintiff to the defendant in reference thereto, the said Thomas Roberts & Co. advanced to the said Thomas Clagett, of W. through the defendant under the contract, money or goods exceeding in value all the corn and tomatoes delivered up to that time and unpaid for by the said Thomas Clagett of W.

The Court (WRIGHT, J.,) granted the prayers of the plaintiff, and the first, third, sixth and eighth prayers of the defendant; and rejected the defendant's second, fourth, fifth and seventh prayers. The defendant excepted. Other exceptions, together with a motion by the defendant to exclude certain testimony of the plaintiff, are stated in the opinion of the Court. The judgment being for the plaintiff, the defendant appealed.

The cause was argued before BRYAN, FOWLER, ROBERTS, and McSHERRY, J., BRISCOE, J., concurred in the decision.

*William Reynolds,* for the appellant.

*William L. Marbury,* for the appellee.

ROBERTS, J., delivered the opinion of the Court.

On March 5th, 1889, the appellee commenced his action in the Court below, by filing against the appellant a declaration in *assumpsit* upon the six common counts. On March 23rd, 1891, by leave of the Court, the form of action was changed from *assumpsit* to *trover*, and an amended declaration filed, containing four counts, but in consequence of the instructions of the Court, the right of recovery was limited to the third count, which reads as follows:

"And for that the defendant converted to his own use, and deprived the plaintiff of the possession of the plain-

tiff's goods, to wit, a large quantity of canned corn and canned tomatoes, together with the cans, in which said vegetables were packed, lying and being on the premises known as Weston, in Prince George's County, Maryland, and being the whole of the canned goods upon said . . . . on the first day of October, 1888."

The testimony in the record discloses that the appellant having a mortgage on the farm of Thomas Clagett of Weston, in Prince George's County, foreclosed the same, and at the sale thereof became the purchaser. On April 29th, 1887, the appellant rented the farm to said Clagett as a monthly tenant. There was a canning factory on the farm, and Clagett proposed to carry on the business of canning green corn and tomatoes, but being at that time heavily in debt, and without means requisite to carry on said business, an arrangement was made between Thomas Roberts & Co., commission merchants of Philadelphia, said Clagett and the appellant, to the effect, that said firm were to furnish the money needed by Clagett to pack goods at the Weston cannery ; the goods were to be shipped to said firm, and sold by them on commission, and in order to secure said firm, and the appellant in the transaction, it was part of the agreement, that the cans in which these goods were to be put, should be placed in appellant's hands, *and "that the goods, as they were canned by Clagett, should become the property of the appellant, at least, the legal title to them should be in him,* and that he should hold them for the purpose of reimbursing said firm for its advances; at the same time said firm was to place in appellant's hands the money that was needed by Clagett for carrying on the canning business, and appellant was to pay it out to Clagett as he needed it ; Clagett was insolvent, and notoriously so, at the time, and an arrangement of this character was absolutely necessary to enable him to go on in business, otherwise his goods would have been seized by some of his antecedent creditors."

Bonaparte *vs.* Clagett.

This was the arrangement in 1887, as testified to by the appellant.

The appellee testifies that he was in 1887 solicited by Clagett to grow corn and tomatoes to be delivered to the factory at Weston; appellee informed Clagett that he had no experience in growing either corn or tomatoes, and that "he did not exactly know about the money transactions or payments." Clagett assured him that, "there was no doubt about that, because the appellant would pay everything he gave a draft for, and pay all bills which he approved ; that appellant had made an arrangement with Thomas Roberts & Co. of Philadelphia, to take the product of his pack, and everything that appellee brought them would be paid for by draft on appellant, who would accept the same." The appellee accordingly raised corn and tomatoes for that year, and delivered the same to the factory at Weston, which amounted to some $1700. Checks were given at different times by Clagett on appellant in payment of the whole amount due appellee, and they were all honored. Everything came to the factory marked with appellant's name, and everything left there marked in the same manner. A notice was stuck upon the warehouse door at the factory, saying, "that all corn must grade either Weston brand or Meadow grades, if I am to pay for it," signed "C. J. Bonaparte."

A similar arrangement was entered into for the year 1888, modified however, in two respects : First, that Roberts & Co. were to place in the hands of the appellant, upon five days notice, whatever sums of money should be, from time to time, required for the purpose of carrying on the business at Weston. Secondly, that the appellant should personally see that the money which Roberts & Co. placed in his hands, should be used for the purpose of packing corn and tomatoes at Weston.

The appellee's testimony further shows that Clagett called upon him in 1888, and again requested him to grow corn and tomatoes for the factory in the same way he had done, and upon the same terms as in 1887, which appellee agreed to do, and accordingly did grow corn and tomatoes, and delivered the same to the factory at Weston, and which were intermingled with other goods of like character of the appellant, between August 10th and September 29th, inclusive, to the value of $2647.09, of this amount appellee was paid the sum of $950, in drafts on the appellant, drawn by Clagett at various times for different amounts, and in favor of the appellee; Clagett provided appellee with seed corn, tomato seed, and other items of account which, when credited, left a balance due appellee of about $1543.00.

The appellant testifies that he paid out to farmers in 1887, from time to time, money for a good deal of stuff, which was not grown on Weston farm, although he did not know it at the time, and paid no attention to what the drafts were given for. For the year 1888, the appellant, at the suggestion of Clagett, signed a number of written contracts with different farmers, agreeing to be responsible for the payment of the goods which they should furnish to Clagett. Appellee first learned about the written contracts in June, 1888, before corn-planting time, when Clagett told him that the old planters had none, that they were only intended for the new planters. Clagett showed appellee one of the contracts in blank, signed by appellant, and offered to fill it up and give it to appellee, but it was mutilated and torn, and he declined it; Clagett assuring him, however, that he would be paid in 1888 as he had been in 1887.

The appellee continued to deliver corn and tomatoes to the 29th of September, inclusive, and only ceased doing so, when he ascertained from appellant that he would not pay him for the goods which he had delivered

The goods which had been delivered at Weston had been processed and placed in cans provided by, and the property of, the appellant, and in the early part of October, when the appellee called upon the appellant at his office in Baltimore, and demanded payment for his goods, and was refused by the appellant, the goods, in their canned state. were still at the factory at Weston. It was there that the appellee requested appellant to give him the goods, or as stated by the appellant: He then asked me whether I would authorize Mr. Tom Clagett to give him enough of the canned goods, which were then down at Weston, to cover his claim. Appellant replied, that "he held those goods virtually as trustee for Thomas Roberts & Co., and that he had no right to let anyone have them." A statement of the aforegoing facts is essential to a proper understanding of this controversy.

The only exceptions which the record presents, are— First, to the refusal of the Court below to grant appellant's motion to exclude from the consideration of the jury the testimony offered in reference to the written contracts with third parties, signed by the defendant, the same having been admitted subject to exception. Secondly, to the granting of the appellee's two prayers, (the first of which was granted subject to the sixth prayer of the appellant,) and the rejection of the appellant's second, fourth, fifth and seventh prayers.

The appellant excepted to the granting of the appellee's prayers because no evidence had been given of the fact stated therein, that the appellee was induced to contract for the sale and delivery of the corn and tomatoes mentioned, by the false and fraudulent representations made by Thomas Clagett of Weston, sufficient in law to authorize appellee to rescind said contract, and also excepted to the appellee's second prayer, because no evidence had been given that appellant had finally dis-

posed of the canned goods mentioned in said prayer before the institution of this suit.

It is very clear to us that the appellant has neither contemplated, nor has he participated in, any fraud intentionally or knowingly in connection with the transactions hereinbefore stated, but he has, in failing to restrict and control Clagett's operations as he had promised Roberts & Co. to do, made it possible for Clagett fraudulently to misrepresent the true state of case to the appellee and other farmers, who were delivering corn and tomatoes, under which the canning business was being conducted at Weston. There is no pretence that the appellee had the slightest knowledge of the character of the arrangement between Roberts & Co., Clagett and the appellant, and he was fairly entitled to infer from his experience in delivering corn and tomatoes to the factory in 1887, during which year all of Clagett's representations had been fulfilled, and the last farthing due for corn and tomatoes delivered to the factory had been paid by drafts on the appellant, that the representations of Clagett concerning the business for the year 1888, would be carried out in good faith. In fact, the early season of 1888 indicated that his statements were to be fully realized as in the previous year, since Clagett in paying appellee for his goods, pursued the same course which he had taken in 1887, and continued to pay the appellee with drafts on the appellant, which were promptly accepted, until the early part of October. We do not think it is any answer for the appellant now to say: "If you have been misled, it was simply because you did not choose to inquire, what Mr. Thomas Clagett's relations with me really were." The appellee was not misled in 1887, for the appellant made good every promise of Clagett to the appellee, and in 1888 he did likewise until the season had nearly closed.

By the very terms of his contract with Roberts &. Co. for 1888, the appellant agreed, "that he would personally see that the money placed in his hands should be used for the purpose of packing corn and tomatoes at Weston." Yet the appellant says in his testimony: "I had no representative at Weston to see that Clagett was applying this money properly. The reason of Messrs. Roberts & Co. for insisting that it should go through my hands was, that they were unwilling to trust Tom Clagett confining his business to the class of goods they desired him to pack. They feared he would go into outside speculations, as he had done the year before, packing apples and lima beans, and things of that kind, but they did not in any of my conversations with them, or in any of our correspondence, intimate to me in any way, that they doubted his personal integrity as to the money. A considerable amount of money was paid out to growers with whom I had no contracts, because Mr. Manning, who acted for me during my absence in Alaska, did not know what the drafts Mr. Clagett drew, were for. In the case of the appellee, for instance, if it had been known that the drafts drawn up in his favor were intended to pay for goods from a person with whom I had no contract, they would not have been honored. I paid whatever drafts were drawn on me without making enquiry to see whether they were drawn for proper purposes or not, until circumstances occurred which caused me to doubt Mr. Tom Clagett's honesty." It is therefore quite manifest that the appellant knew in 1888 that Clagett had not observed his engagements with himself and Roberts & Co. in the transactions of 1887, and it is equally clear that Clagett, through the appellant, made good to the appellee every promise made to him, as to how he would be paid for whatever he should bring to the factory. There is nothing in the agreement between the three parties that prohibited Clagett from buying corn and tomatoes *ad libitum*, nor is there the slightest

suggestion that he was to be restricted in his purchases of corn and tomatoes, but to the contrary, he had in 1887 purchased from whomsoever he thought proper, and the appellant without hesitation paid his drafts. The appellant testified, "that it had been the understanding, at least, my understanding of the matter, and I supposed the understanding of everybody, that all that Mr. Clagett was canning at the factory in 1887, was the produce of his own farm." Neither Clagett nor Roberts was called to state their understanding, but Clagett, who has spoken through the appellee, appears to have entertained an entirely different understanding as to his authority in the premises.

In the season of 1887, the factory was operated at Weston under the arrangement between Roberts & Co., the appellant, and Clagett, as already stated, and a number of farmers, among whom was the appellee, delivered their corn and tomatoes to Clagett at Weston, and were paid by drafts upon the appellant. By the agreement for 1887, it had not been contemplated, so far, at least, as the appellant understood, to can any corn and tomatoes, other than that which might be grown on the Weston farm; but Clagett did purchase from other farmers, and canned considerable quantities of goods other than that which had been grown on Weston farm. The private arrangement between Roberts & Co., the appellant and Clagett, by which he was to be supplied with funds, as already stated, was not made known to the appellee, nor to the farmers, who were about to deliver their goods at Weston, but Clagett placed his own construction upon his relations with the appellant, and informed the appellee that the appellant had agreed to start him in the canning business, and back him in running it, and would pay anything for which he might give a draft. Clagett's statements were fully verified as to the year 1887, and partly as to the year 1888.

Bonaparte *vs.* Clagett.

The allegation of the third count in the declaration is, "that the defendant converted to his own use and deprived the plaintiff of the possession of his goods, to wit, a large quantity of canned corn and canned tomatoes, together with the cans in which said vegetables were packed." We think it fairly deducible from the testimony that the appellant, through the instrumentality of Clagett, got possession of the appellee's goods, which he has, upon demand, refused to return or pay for. How far the law will justify the appellant in his contention, is the question now presented for our determination. It can scarcely be denied that, if Clagett had not made the representations which he did, he never could have induced any one to deliver corn and tomatoes to him for the purpose of canning them, nor can it be fairly contended that the appellant obtained possession of the goods of the appellee through Clagett's misrepresentations; and we think that the appellant, by the exercise of reasonable caution, could have prevented Clagett from making effective his misrepresentations to the appellee. The appellant knew that Roberts & Co. distrusted Clagett, and therefore by the terms of their agreement required the appellant personally to look after Clagett's conduct of the factory. The appellant admits that he did not go to Weston until March, 1889, and had no one there to represent him, in seeing that Clagett was applying the money properly. In this state of case, we think, the appellant has been negligent of his duties in the premises, and that he has thereby enabled Clagett to accomplish his purpose in having the appellee deliver his corn and tomatoes to the factory at Weston. Judge Story, in his work on *Agency, sec.* 56, says: "It is a general rule that where one of two innocent persons must suffer by the misconduct of a third person, that party shall suffer, who, by his own acts and conduct, has enabled such third person, by giving him credit, to prac-

tice a fraud or imposition upon the other party." *Hall vs. Hinks*, 21 *Md.*, 418. We think *Mechem*, in his work on *Agency*, sec. 113, correctly states the law, when he says: "It is immaterial whether the unauthorized act arises from a contract, or is founded upon a *tort*. Whoever, with knowledge of the facts, adopts as his own, or *knowingly appropriates the benefits of, a wrongful act*, which another has, without authority, assumed to do in his behalf, will be deemed to have assumed the responsibility of the act."

After a careful examination of the testimony in the record, we think there was evidence legally sufficient to have justified the jury in finding, (1), that the representations of Clagett were made directly to the appellee, (2), that they were false in fact, (3), that they were false to the knowledge of Clagett, (4), that they were material, (5), that the appellee acted upon the faith of them, and was thereby damaged, and by the course of conduct and dealing of the appellant in the premises, he has rendered himself liable to the appellee, in such damages as he may have sustained by the conversion and appropriation, by the appellant, of the corn and tomatoes which were delivered at Weston by the appellee, and for which he has not been paid.

This view affirmatively disposes of the appellee's right to maintain this action. It may as well be said here, that we do not concur in the appellant's claim, that the appellee in bringing his action in *assumpsit*, "thereby elected with full knowledge of all the facts to affirm the contract of sale." Mr. Chief Justice SHAW, delivering the opinion of the Court in *Butler vs. Hildreth*, 5 *Metc.*, (*Mass.*), 52, says: "Of a similar character is the case of *Peters vs. Ballistier*, 3 *Pick.*, 495, which at first view seemed like the present. The plaintiffs first brought an action of *assumpsit*, which they discontinued, and afterwards brought *trover*, which they main-

tained. But the decision proceeded on the ground that the plaintiff, had, in the first instance, misconceived their remedy, and could not maintain an action of *assumpsit;* that they had no election to make, and could only recover against those defendants in an action of *trover,* relying on their legal title to the property, and a conversion by the defendants. In case where there are two independent and collateral remedies, not inconsistent with each other, a party is not barred, by discontinuing one, from commencing a new action on the other. A man may have *trespass* or *replevin* for the same goods; but the one right is not repugnant to the other. We do not see why he might not discontinue one and commence the other, at any time before he has proceeded to judgment.''

In this case the appellee, before judgment, discovered that he had misconceived his remedy, and upon amendment allowed he changed his form of action from *assumpsit* to *trover.* We do not think these facts can be construed to amount to a ratification of any supposed sale; the judgment was entered in an action of *trover* when conversion was the *gist* of the action.

There was some discussion at the hearing in this Court as to the legal effect of the decision in *Hall vs. Hinks,* 21 *Md.,* 406, in its application to this controversy. But it is not necessary for us to appeal to that case in the determination of the questions involved here. Upon the facts which the record presents, it would be a strange anomaly that the law provided no remedy for the relief of the appellee under the proof in the record.

In the view we take of this case, it makes no material difference, so far as a right of recovery is involved, whether Clagett, in making the representations he did to the appellee, was actuated by a fraudulent design or not, for in any event it could only affect the question of damages. In the one case, the appellee might have been

entitled to recover the whole of the goods·when mixed, and in the other, only such damages as would make good to him the loss which he had sustained. In this case, however, it is only sought to recover such damages as will compensate the appellee for the corn and tomatoes which Clagett canned, and which went into the possession of the appellant, and for which the appellee never was paid.

Doctor *Bishop*, in his work on *Non-Contract Law, sec.* 938, declares the correct doctrine to be that "where the owner of goods wrongfully mixes them with another's, so that they cannot be identified and separated, he thereby relinquishes them to the other, and is entitled to no part of the intermixture. For he can derive no advantage from his own wrong, and the party without fault is under no duty to surrender any of his goods to prevent loss to the *tort-feasor*. But where the goods are distinguishable, or the intermingling occurred without the owner's fraud or fault, he will be protected in such way as the circumstances permit. Thus, if the logs of two owners become innocently intermingled past identification, each may have his proportion of the lumber they produce. Or if, for storage, the grain of different people is by the warehouseman put together pursuant to a usage not objected to, the mass will be treated by the law as their common property, owned in proportion to their respective deposits. In which proportion they must severally sustain the loss from any shrinkage. And after the shares of all but one have been withdrawn, the latter owns the remainder in severalty, and he can hold it against the warehouseman and his transferees so long as it can be identified. Views have occasionally been expressed in some measure differing from these; but the author submits that this statement of the doctrine embodies the true reasoning of the law, and the result of, at least, the better considered authorities."

Bonaparte *vs.* Clagett.

Judge COOLEY, however, in his work on *Torts*, 53, 54, is authority for all that is contended for in this case, when he says, "Even if the commingling were malicious or fraudulent, a rule of law which would take from the wrong-doer the whole, when to restore to the other his proportion would do him full justice, would be a rule wholly out of harmony with the general rules of civil remedy, not only because it would award to one party a redress beyond his loss, but also because it would compel the other party to pay not damages but a penalty. The infliction of penalties by way of civil remedy is not favored in the law ; on the other hand, the law inclines against them ; construing contracts so as to avoid them, and in many cases giving relief against them in equity, when the parties have expressly stipulated for them. Therefore, the law in these cases does justice between the parties as nearly as, under the circumstances, is practicable, by dividing between them the commingled mass according to their respective proportions. Nor is this method of arranging their interests limited to the cases in which the commingled mass is exactly the same with the separate parcels; it is sufficient that it is practically the same, so that the separation of that which is equivalent in quantity or measure will give to the party whose property has been wrongfully taken, that which is substantially equivalent in kind and value. This rule has been applied to the case of quantities of saw-logs, belonging to different parties, but commingled together ; and it is held, that to give the party whose logs are lost the option of taking from the mass an equivalent in quantity and quality, or of demanding the value, is all that in justice he can require."

As to the measure of damages, it is undoubtedly true, that the general rule is the value of the chattels at the time of conversion, with interest to date of the judgment, *Stirling, et al. vs. Garritee*, 18 *Md.*, 468; but in this

case the conversion, and the delivery were so nearly simultaneous, and the appellant having sustained no actual damage thereby, that we find no substantial error in the instructions of the Court in this respect.

Was a demand in this case required to maintain the action? We think not.

The appellant had full knowledge of the manner in which the goods had been acquired, and having converted them to his own use, and refused to deliver them in their canned state, to the appellee, or to pay him the value of the goods in their uncanned state, there exists no possible reason for a demand.

The appellant had notice and opportunity to have restored the goods, or paid for the same, if he had thought proper so to do, but, having declined to do either, he cannot now claim that he was entitled to a demand.

When a person comes into the possession of property, either wrongfully or tortiously, as by force, or through one who had no title thereto, a demand is not necessary. *Woodbury vs. Long,* 8 *Pick.,* 543; *Paige vs. O'Neal,* 12 *Cal.,* 483; *Farrington vs. Payne,* 15 *Johnson,* 431; *Gilmore vs. Newton,* 9 *Allen,* 171; *Levi vs. Booth,* 58 *Md.,* 305.

In this case the testimony clearly shows that the appellee requested the appellant to pay him or to give him sufficient of the canned goods to pay his claims. It has been held that a demand of payment for the goods is equivalent to a demand for the goods themselves. *La Place vs. Aupoix,* 1 *Johns. Cas.,* 406. And further when there has been an actual conversion of the property, demand and refusal are not necessary, and are only necessary when the defendant comes into possession of the property lawfully. *Bates vs. Conkling,* 10 *Wend.,* 389; *Tompkins vs. Haile,* 3 *Wend.,* 406; *Levi vs. Booth, supra.*

The appellant, after obtaining possession of the goods in controversy, assumed dominion over them, and re-

fused to surrender them to the appellee which is a satis-factory test of the conversion. *Bristol vs. Burt*, 7 *Johns. Rep.*, 256.

That the appellee was employed at the factory during part of the time his corn and tomatoes were being de-livered and processed, and thereby was informed as to their conversion, is not entitled to much consideration, in view of the fact that it was not until after his em-ployment had ceased that he ascertained the true char-acter of Clagett's representations. Lord ELLENBOROUGH in *Stephens vs. Elwall*, 4 *Maule & Sel.*, 259, lays it down as clear law, "that a person is guilty of a conversion, who intermeddles with the property of another and dis-poses of it; and it is no answer that he acted under authority from some other person, who had himself no authority to dispose of it." *Reid vs. Colcock*, 1 *Nott & McCord*, 592; *Neal vs. Hanson*, 60 *Maine*, 84; *Hardman vs. Booth*, 1 *Hurl. & Colt.*, 803; *Hollins vs. Fowler*, *L. R.*, 7 *Ho. L.*, 757; and this is the case, although, in its inception, the defendant's possession was lawful. *Mur-ray vs. Burling*, 10 *Johns.*, 172; *Hart vs. Skinner*, 16 *Vt.*, 138; *Rotch vs. Hawes*, 12 *Pick.*, 136. It follows from the views expressed that we find no error in the action of the Court below in granting the appellee's first prayer and also the second prayer. We have gone fully into the various questions presented by the prayers of the appellant, and from what we have said it follows that we must affirm the action of the Court below in rejecting the appellant's second, fourth, fifth and seventh prayers. We think the Court below committed no error in overruling the appellant's motion to exclude from the consideration of the jury all of the appellee's testimony in reference to the written contracts with third parties signed by the appellant. These contracts were properly admitted as contributing to show the manner in which the business had been conducted at Weston, and they

show that the appellant was contracting with the farmers who were delivering corn and tomatoes to the factory, and obligating himself to pay certain prices for the same.   These contracts were printed forms, and one of them signed by appellant, had been tendered appellee by Clagett.

We think these contracts were properly submitted to the jury in connection with the other testimony in the case, and largely contributed to sustain the appellee's contention.

With respect to the special exceptions to the appellee's prayers, we have, in the statement of our views, disposed of them, and no further expression is now necessary.

*Judgment affirmed.*

(Decided 22nd June, 1893.)